## NATIONAL CITIZENS BANK OF MANKATO v. GEORGE A. McKINLEY AND OTHERS.[1]

June 7, 1912.

Nos. 17,701—(215).

**Conversion by chattel mortgagor.**

A manufacturer who executes a chattel mortgage upon his raw material has no right, in the absence of an agreement so authorizing, to convert the material into manufactured articles and sell and dispose of the same upon the market. His act in doing so, without the consent of the mortgagee, constitutes a wrongful conversion of the mortgaged property.

**Contract construed.**

Contract construed, and *held* not to confer the right to convert the raw material into manufactured articles.

[1] Reported in 136 N. W. 579.

**Priority of liens — waiver of senior lien.**

Where a senior lien holder consents to the conversion by the debtor of the property burdened with the lien, his right of priority over a junior lien holder is lost; and the latter, whose claim is in the form of a chattel mortgage upon the property, may maintain an action against the mortgagor for the wrongful conversion of the property.

**Action by junior lien holder.**

In such an action the mortgagor cannot set up in defense the paramount lien of the senior creditor, for as to the junior creditor the right of priority ceased by reason of his consent to the wrongful conversion of the property.

**Verdict sustained by evidence.**

The record *held* to present no reversible errors, and the evidence supports the verdict.

After the former appeal, reported in 115 Minn. 378, 132 N. W. 290, the defendants amended their answer, setting up the defenses stated in the opinion. The case was tried before Olsen, J., acting in place of the judge for the Sixth judicial district, and a jury which returned a verdict in favor of plaintiff for $6,920.14. From an order denying defendants' motion for judgment notwithstanding the verdict or for a new trial, they appealed. Affirmed.

*Harrison L. Schmitt* and *John W. Schmitt,* for appellants.

*C. E. Phillips* and *Lorin Cray,* for respondent.

BROWN, J.

Action for an alleged wrongful conversion of certain logs and timber, in which plaintiff had a verdict, and defendants appealed from an order denying their alternative motion for judgment or a new trial.

The action was before the court on a former appeal, and was remanded for a new trial. 115 Minn. 378, 132 N. W. 290. The facts are there stated, but to an understanding of the questions presented on this appeal a short restatement is necessary. Before the last trial defendants amended their answer, in response to suggestions in the former opinion, setting up in defense (1) a paramount outstanding lien against the property in favor of one Hoerr of an amount exceeding the value of the property; and (2) that all the

proceeds from the sale of the property were used to defray the cost and expense incurred in the manufacture, sale, and disposal of the property, which defendants claim were authorized by the contracts presently to be mentioned. The complaint was also amended. The short facts are as follows:

Defendant McKinley, in 1906, entered into a contract with the Itasca Cedar & Tie Company, under which he agreed to cut and deliver to that company a large number of cedar posts, poles, and ties, to the amount and value of about $200,000. The contract provided for payments during the progress of the work, namely, fifty per cent of the purchase price when the logs were cut and banked in the woods, twenty-five per cent on arrival at Brainerd, and the balance when delivered to the company. McKinley was without funds, and to procure the necessary money to enable him to perform the contract he entered into a further contract with one Hoerr, by which Hoerr undertook and agreed to advance the sum of $20,000 for that purpose. To secure the repayment of this money McKinley assigned to Hoerr the Itasca Company contract, by which assignment Hoerr became entitled to receive all payments from that company for material delivered to the extent of the advances made to McKinley. Under this arrangement Hoerr advanced to McKinley the sum of $26,500, and became surety for the payment of claims against McKinley, incurred in his logging operations, aggregating $12,500. Hoerr was at the time of these transactions president of plaintiff bank, and its managing officer, and, in addition to the money personally advanced by him to McKinley, he loaned to McKinley, for the bank, the further sum of $4,835.37. With funds thus obtained McKinley proceeded to the work of performing his contract with the Itasca Company, and cut and caused to be transported to Brainerd a large number of cedar poles, ties, and posts, and had on hand on July 25, 1907, in addition to the poles and ties cut for and to be delivered to the Itasca Company, the poles, ties, mill wood, and posts in controversy in this action.

On that date McKinley executed and delivered to plaintiff a bill of sale of said property, cedar poles, ties, lath bolts, and mill wood,

to secure the payment of the indebtedness due it on account of the loan made by Hoerr. Though in the form of a present sale of the property, the bill of sale in fact was executed and delivered as security, and for all intents and purposes amounted in law to a chattel mortgage. The first four items of property specified therein were under contract to be sold to the Itasca Company, and the proceeds of all the property mentioned therein had previously been pledged to Hoerr as security for the payment of the advances made by him; and it was agreed, as expressed by the terms of the bill of sale, that Hoerr should collect and receive all money paid for the property as sold, and apply the proceeds therefrom, first, to the payment of the unpaid costs and expenses of preparing and delivering to the Itasca Company the portion of the property belonging to it; second, to the payment of the Hoerr claim; and, third, to the payment of plaintiff's claim. Hoerr, by written indorsement at the foot of the bill of sale,. expressly consented thereto, and agreed thereby to perform the same, and to collect the proceeds of sales and apply them as required by. the contract.

McKinley thereafter continued in control of his logging operations until some time in 1908, when he and the defendant Sonnesyn and others incorporated the defendant, Brainerd Lumber & Mercantile Company, and the business was then turned over to that concern, including the property covered by plaintiff's bill of sale. Thereafter the Lumber Company, acting through defendants McKinley and Sonnesyn, converted a large number of the logs into shingles and ties, and sold and disposed of the same, turning the proceeds into the treasury of that company, the company in turn paying therefrom the cost and expense of operating its manufacturing plant. Hoerr authorized and consented to this disposition of the property and he collected no part of the proceeds for the purpose of applying them as provided for by the terms of the bill of sale or otherwise. Defendants had due notice of the rights of plaintiff, as well as of the rights of Hoerr. Plaintiff demanded the possession of the property, and upon the refusal to surrender it brought this action to recover the same.

The action was replevin in form, but we held on the former appeal that recovery might be had in conversion.

1. Defendants offered to show on the trial the cost and expense of converting the logs into shingles in reduction of any liability to plaintiff, if any was shown, and the evidence so tendered was excluded. It also appears from the record that defendants used the mill wood covered by the bill of sale as fuel in the operation of the sawmill. They contend that their act in converting the logs into shingles and using the mill wood as fuel was contemplated and authorized by the contract, and that the court erred in excluding the evidence. We are unable to concur in this contention.

It may be stated as a correct principle of the law that a manufacturer who executes a chattel mortgage upon his raw material has no right, in the absence of an agreement so authorizing, to convert the material so mortgaged into manufactured articles, and sell and dispose of the same on the market. His act in doing so may be treated by the mortgagee as a conversion of the property, or, if the identity of the property as mortgaged be not wholly lost, pursue the manufactured article. No agreement to so change the form of the mortgaged article can be implied from the mere fact that the mortgagor is a manufacturer. The mortgagee has the right to insist that the property remain as mortgaged, and any attempt, without express or implied authority, to change its form, will constitute a wrongful conversion. And starting with this as a correct rule of law in such cases we have only to determine whether the transaction here involved, construed in the light of the various written contracts, expressly or impliedly authorized defendants to convert the mortgaged property into shingles, and to charge the expense and the cost thereof to plaintiff, or against the property covered by its security.

It may be conceded, for the purposes of the case, that the contract between Hoerr and McKinley, which the Lumber Company assumed, contemplated and authorized defendants to continue in the business of manufacturing lumber, and so far as Hoerr's rights were concerned no wrong was committed by defendants. In fact, neither that contract nor the contract with the Itasca Company, which

was assigned to Hoerr, vested in him any claim to, or lien upon, or right to any specific property. He was entitled to one-half of the net profits of the business, and to reimbursement for advances made to McKinley, and for that purpose was entitled to receive all proceeds from sales made, applying the same to the purposes stated, after payment of the cost and expense of operation.

But from the fact that the McKinley-Hoerr contract contemplated and authorized a continuance of the lumbering operations, the manufacturing of ties and shingles, it does not follow that plaintiff's contract also authorized the same. Plaintiff had a mortgage upon specific property, and had the right to insist that it remain in the condition in which it was when the mortgage was executed. Nor did plaintiff make itself a party to the McKinley-Hoerr contract by the provisions of the bill of sale relied upon in support of this claim. The bill of sale recognized and referred to that contract, and the right of Hoerr thereunder to collect and receive the proceeds of sales made; but it did not, by any fair construction, confer upon either Hoerr or McKinley the right to convert the mortgaged property into ties or shingles. The clause in the bill of sale providing for the payment by Hoerr of the "costs and expenses of preparing the same and delivery thereof to said company" had reference solely to the logs and material contracted to be sold by McKinley to the Itasca Company, and not to the cost and expense of operating defendant's sawmill in the general manufacture and sale of lumber. The Itasca Company is the only "company" referred to in the bill of sale, and the conclusion is clear that the cost and expense of preparing and delivering material to it was the only "cost and expense" the parties had in mind in the execution of plaintiff's bill of sale. If this particular property was necessary to enable defendants to continue the operation of the mill, the right to use it should have been provided for by the contract. It would not do, on the facts here disclosed, to hold that plaintiff assented or by implication authorized the same.

. If the bill of sale was susceptible of the construction contended for by defendants, namely, as a pledge to plaintiff of the proceeds

from the manufacture and sale of the mortgaged logs, a different situation would be presented; for in such case plaintiff's remedy would undoubtedly be an action for an accounting. But the contract does not so read. On the contrary, it expressly conveyed to plaintiff the specific property, and not the proceeds of the manufactured articles. While it authorized a sale of the property, the collection of the proceeds by Hoerr, and the distribution thereof as therein directed, it clearly did not authorize a change in the form of the property at the cost and expense of plaintiff.

Our conclusion, therefore, upon this branch of the case, is that the evidence offered by defendant, heretofore referred to, was properly excluded, that the evidence presented a question for the jury upon the issue of conversion, and that the verdict in that respect is sustained. This conclusion renders unnecessary a separate consideration of some of the assignments of error.

It sufficiently appears from the record that both McKinley and Hoerr authorized the manufacture of the logs into shingles, and the exclusion of Exhibit 1 was therefore, if error at all, without prejudice. Some of the requests for instructions to the jury were not in harmony with the views here expressed respecting the rights and liabilities of the parties, and there was no error in refusing them.

2. We come, then, to the only other question requiring special mention. Plaintiff's rights under the bill of sale were expressly made subject to the existing lien of Hoerr upon all the proceeds derived from this and other property, and the contract provided that he should be paid first. His lien was therefore paramount and superior to plaintiff's, made so by express contract between the parties, and unless he waived his rights plaintiff must fail in the action, for it does not appear that Hoerr has been paid. We are of opinion, however, and so hold, that the evidence made the question of waiver one of fact. By an indorsement upon the bill of sale Hoerr assented to the terms of that contract and agreed to perform the conditions thereof so far as imposed upon him. He was required thereby to collect and receive the proceeds from the sale of the property and apply it in payment of costs and expenses, upon his own claim,

paying the balance to plaintiff. It appears from the evidence that he wholly failed to perform his part of the contract, and that he assented to the manufacture of the shingles and the sale thereof, and an appropriation of the proceeds thereof to the business and affairs of the Lumber Company, making no effort whatever to protect the rights or interests of plaintiff; an obligation imposed, not only by the contract, but by the law. Union National v. Moline, 7 N. D. 201, 73 N. W. 527.

Hoerr and plaintiff occupied the position of senior and junior mortgagees, or lien claimants, with the right and obligation on the part of Hoerr to take and receive the proceeds from a sale of the property and apply it to the payment of the respective claims of both in their order of priority. This obligation he wholly failed to perform, and consented to a wrongful disposal of the property, to the injury of plaintiff, the junior lien holder. In such a situation the law will displace him as the creditor having the superior lien, and give preference to the junior claimant. In other words, his consent to a sale of the mortgaged property and the conversion of the proceeds thereof discharged his lien. Fairweather v. Nelson, 76 Minn. 510, 79 N. W. 506. It is not material whether his conduct be termed a waiver of his right of priority, or a loss thereof as a matter of law. In either view his preferential position disappears. It follows, therefore, that on the facts disclosed Hoerr has no paramount lien upon the converted property which defendant may here interpose as a bar to plaintiff's right of recovery.

This covers all questions requiring special mention. Our examination of the record discloses no errors of a nature to justify a new trial.

Order affirmed.