[Civ. No. 376. Fourth Appellate District.—May 9, 1932.]

SAN JOAQUIN VALLEY SECURITIES COMPANY (a Corporation), Appellant, v. JOHN F. PRATHER, Defendant; MRS. L. M. HUTCHISON, Respondent.

Everts, Ewing, Wild & Everts, Dan F. Conway and L. N. Barber for Appellant.

Guy Knupp, Harris, Willey, Griffith & Harris, Theodore M. Stewart and F. H. Pearson for Respondent.

BARNARD, P. J.—This action, with four companion cases, arose as a result of a rather unique series of frauds practiced by an automobile agent. During the first half of 1927 and for some years prior thereto, Frank H. Davis, operating as Frank H. Davis, Inc., was the agent at Fresno for Packard automobiles. In April, 1925, the respondent Hutchison had purchased from Davis for cash a new Packard automobile, which had not been entirely satisfactory. In May, 1927, Davis represented to the respondent that it was the desire of himself and of Earle C. Anthony, Inc., general distributors for the Packard, to replace respondent's automobile with a new car that would be more satisfactory. On May 20, 1927, Davis obtained respondent's signature to a "cash order", by the terms of which she agreed to purchase a new Packard car for $2,928, payable $2,500 at the time of signing the order and the balance on delivery of the car. At the bottom of this order Davis signed a receipt for $2,500 as deposit on the purchase price of the order, "representing trade allowance on 1925 Packard". At the same time, the respondent signed her name on the certificate of ownership, commonly called the "pink slip", and handed it to Davis, the testimony being that this was "turned over to Davis for Earle C. Anthony" and that this was done because Davis told her that he would have to have the pink slip in order to show Earle C. Anthony that he was going to make this trade. The evidence also shows that Davis agreed to return the pink slip to the respondent. The respondent at all times retained possession of the car and at all times retained possession of the certificate of registration, commonly called the "white slip". On the same day, May 20, 1927, Davis signed a conditional contract of sale, purporting to sell this same car to one John F. Prather for $2,034.21, acknowledging receipt of $760 in cash and providing for the payment of the balance in installments. Attached to this conditional contract of sale is an assignment from Davis to the appellant dated the day before, May 19, 1927. This assignment also contains provisions by

which Davis guaranteed to warrant and defend the title to the property, and guaranteed the fulfillment of the contract according to its terms, and also contains the following:

"That the information concerning the purchaser, given on the blank provided on the contract for that purpose, was truly recorded as the same was given by said purchaser; that the said contract is *bona fide* and was actually signed by the person named therein as purchaser; that the property which is the subject of said contract is truly and accurately described therein, and that said property has been delivered into the possession of the purchaser; and that I have the full and complete title to said property, subject only, to the rights of the purchaser under and by virtue of said contract."

The evidence shows that on or about May 20, 1927, Davis transferred this purported contract with Prather to the appellant and received a check for the proceeds, less various charges in accordance with an arrangement between them. At the same time, he turned over to appellant the pink slip which bore the signature of Mrs. Hutchison, both as registered owner and as legal owner, the signature of Frank H. Davis, Inc., as first buyer, and the signature of John F. Prather as second buyer. This was then signed by the appellant as new legal owner. While the record shows that a blank was provided for the insertion of a date in connection with each of such signatures, no date was inserted as to any one of them. The record shows a copy of another pink slip issued by the chief of the division of motor vehicles covering this car under date of June 2, 1927, purporting to be issued to John F. Prather, with the name of appellant given as the legal owner.

It appears from the uncontradicted evidence and is freely admitted by the appellant that the respondent never received from Davis a new car; that Davis went out of business a month or two after this transaction; that Prather was either a fictitious person or that he was induced by Davis to sign the conditional sales contract for the purpose of perpetrating this fraud; that he paid nothing on the contract; that he was then unable to make the payments and had no intention to either buy the car or make such payments; and that the respondent knew nothing about any such purported resale of her car until months afterward.

After several defaults in the payment of installments and after Davis had gone out of business, this action was brought by the appellant in the ordinary form of a claim and delivery action. The defendant Prather defaulted and the respondent answered, denying the appellant's title and right of possession and setting up separate defenses based upon the above state of facts, and alleging title and right of possession in herself. The court found that the appellant is not the owner or entitled to the possession of the car in question, but that the respondent is and at all times material has been the owner and entitled to the possession of the same; that the defendant Prather has never been in possession of the automobile and has never been entitled to such possession; that the appellant never has had possession of the car; that the purported conditional sale contract with Prather was fraudulent and fictitious; that the appellant did not exercise ordinary care in purchasing said contract and had it used such care before accepting said fictitious contract it would have learned the true situation; and that if the appellant parted with anything of value, it did so because of its own negligence and not otherwise. From the judgment which followed this appeal is taken.

As grounds for reversal the appellant relies upon two theories: (1) That the legal title and right of possession passed to the appellant; (2) That the respondent is estopped to deny the passing of title to the appellant, for the reason that she invested Davis with the *indicia* of ownership and thereby caused appellant to part with value in reliance upon the apparent title.

In support of its contention that title had passed, appellant relies upon the provisions of the California Vehicle Act and the following statement which appears upon the so-called pink slip:

"This certificate is evidence of legal ownership of vehicle it describes. Place same in safe or bank vault. Do not place in machine. When car is sold this instrument properly endorsed must be presented to the Division before transfer can be made."

Since the appellant relies upon the provisions of the statute to overcome the circumstance that the respondent retained the possession of the car, it is important to examine the statute and, in particular, to inquire as to

whether its terms were complied with. Section 45 of this act, as it then existed, covered the matter of transferring both the legal title to an automobile and any other interest therein. Subdivision (a) of this section provided that upon a transfer of the title or of an interest in the vehicle registered, the person or persons whose title or interest was to be transferred and the transferee, should sign the certificate of ownership in the place provided upon the reverse of said certificate. Subdivision (b) provided that within ten days thereafter the transferee should forward both the certificate of ownership, so indorsed, and the certificate of registration to the division, which should file the same. Subdivision (d) provided that upon the receipt of both of these certificates the division should re-register such vehicle and should issue to the owner and to the legal owner, entitled thereto by reason of such transfer, both a new certificate of registration and a new certificate of ownership, respectively. Subdivision (e) then provided:

"Until said division shall have issued said new certificate of registration and certificate of ownership as hereinbefore in subdivision (d) provided, delivery of such vehicle shall be deemed not to have been made and title thereto shall be deemed not to have passed and said intended transfer shall be deemed to be incomplete and not to be valid or effective for any purpose."

In at least two respects, the record fails to show a compliance by the appellant with these provisions of the statute. It does not appear that the transferee of this certificate of ownership forwarded the same within ten days of the time it was signed. It affirmatively appears, however, that this transferee forwarded only the certificate of ownership and that the certificate of registration, which is also required to be forwarded, was never sent in. While it appears from the evidence that a new certificate of ownership was issued by the motor vehicle department, it does not appear that a new certificate of registration, as required by the act, was ever issued. In any event, the division was not authorized to re-register the car or issue a new certificate of ownership and new certificate of registration, until it had received both the certificate of ownership and the certificate of registration, as provided in the statute. The division not having issued these certificates in

accordance with the provisions of subdivision (d) of this section of the act, under the provisions of subdivision (e) thereof, the title to the automobile must be deemed not to have passed, and the purported transfer was incomplete and not valid or effective for any purpose. (*True* v. *Crane,* 119 Cal. App. 653 [7 Pac. (2d) 357]; *Parke* v. *Franciscus,* 194 Cal. 284 [228 Pac. 435].) Not only was this purported transfer ineffective, but it became so because of a failure on the part of the appellant to obtain and forward the certificate of registration, a burden placed upon it by the statute itself. In *Samuels* v. *Barnet,* 79 Cal. App. 529 [250 Pac. 405, 406], the court said:

"The appellant bases his right of action on a purported transfer of a second-hand automobile wherein he failed to meet the requirements of the statute. The section quoted provides that unless these restrictions are followed the 'intended transfer shall be deemed to be incomplete and not to be valid or effective for any purpose'. The legislature could scarcely have used words which would have been more expressive of the intention to declare that such transfers could not be effective for any purpose. Such being the case, the transfer could not be effective for the purpose of conferring upon appellant the right of possession necessary for the maintenance of this action."

Appellant argues that this particular transfer was governed not by those portions of section 45 of this act to which we have referred, but by subdivision (g) thereof. It is argued that the first part of this subdivision, referring to the transfer from one legal owner to a new legal owner, without affecting the interest of the holder of the certificate of registration, has no application to the rest of the subdivision and that the remainder thereof permits a transfer in the manner apparently followed in this case. We think all of subdivision (g) must be taken together and that it provides, as stated therein, a manner of transferring the interest of one legal owner to another legal owner, when the interest of the holder of the certificate of registration is not to be affected thereby. It refers throughout to a transfer from one legal owner to a new legal owner and the plain meaning of the provision, that in such a case the division shall issue a new certificate of ownership to the "new legal owner" and a new

certificate of registration to the "registered owner", is that while there is a change in the legal ownership the registered ownership remains the same. This is also indicated by the language which follows providing that the registered owner, upon receiving the new certificate of registration, shall sign the same and place it in the vehicle to which it refers and destroy the former certificate of registration. We think that this subdivision (g) has application only in a case where the interest of the registered owner is not being affected and that it has no application in a case like the one before us, where the interest of the registered owner is not only affected but is supposed to be absolutely transferred to another party. The new certificate of ownership issued in this case purported to change the legal ownership from the respondent to the appellant and also purported to change the registered ownership from the respondent to Prather, which could only be done in the manner provided for in subdivisions (a), (b) and (d). We conclude that title to this automobile did not pass to the appellant.

█ Nor do we think the circumstances are such as to estop the respondent from denying such passing of title, as having parted with the apparent title in such a manner as to have deceived the appellant. While the respondent parted with the possession of the so-called pink slip, she not only retained possession of the car but of the certificate of registration as well. She had a right to rely upon her rights under the statute and had no reason to apprehend that an attempt would be made to deprive her of her rights so long as she held the certificate of registration which, under the statute, must also be sent in by the transferee to the division, in order to complete a transfer. Until this certificate of registration was obtained by the transferee, the *indicia* of ownership relied upon by appellant was incomplete. Appellant, not having complied with the law and having made no effort to obtain the certificate of registration, is in no position to set up the partial *indicia* of ownership as estopping the respondent from asserting her rights. The court found that the appellant was negligent in the matter and this finding is amply supported by the evidence. Not only was it negligent in not complying with the law as to the transfer it sought, but it relied

upon the pink slip alone, without any investigation as to where the white slip was. There was also evidence that in one of these cases the appellant was told, by a person supposedly referred to by the purchaser of the car, that this purchaser was honest but that he was in no position, financially, to undertake such a contract. The appellant called as a witness the officer of another loan company for the purpose of showing the custom of these companies in buying such contracts, and even this witness testified that in the purchase of a used-car contract, his company required that both the registration certificate and the ownership certificate be furnished with the contract. The guarantees included in the assignment from Davis to the appellant and the other evidence introduced, strongly indicate that the appellant was not relying entirely upon the so-called pink slip, but to a large extent upon the integrity and responsibility of the automobile agent with whom they were dealing. In our opinion, the appellant was not such an innocent purchaser as would be entitled to claim an estoppel against the respondent, and no such equitable circumstances here appear as will relieve the appellant from the effect of its lack of compliance with the provisions of the statute governing the transaction.

For the reasons given the judgment is affirmed.

Marks, J., and Jennings, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on June 6, 1932, and an application by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on July 7, 1932.