GEORGE HESS *v.* SAM PAULO, SR.

No. 2708.

Submitted December 27, 1948.          Decided February 18, 1949.

Kemp, C. J., Peters and Le Baron, JJ.

280

OPINION OF THE COURT BY LE BARON, J.

(Peters, J., dissenting.)

George H. Hess brought replevin against Sam Paulo, Sr., to recover possession of an automobile, driven in Honolulu and registered in the office of the treasurer of the city and county of Honolulu under the motor vehicle law. (R. L. H. 1945, c. 138, pt. II, §§ 7335-7348.) Sam Paulo, Sr., is a deputy high sheriff who holds possession of the automobile on levy of attachment for a judgment creditor

of George Lamb. At the time of attachment George Lamb was registered as owner and the Honolulu Federal Employees' Federal Credit Union as legal owner of the automobile under the motor vehicle law. For convenience and clarity George H. Hess is hereinafter designated as the "plaintiff," Sam Paulo, Sr., as the "defendant," George Lamb as "Lamb" and the Honolulu Federal Employees' Federal Credit Union as the "finance corporation," a descriptive of its type of organization. The plaintiff claims the right to possession by reason of purchase of the automobile from Lamb on delivery of the certificate of ownership, endorsed by the finance corporation as legal owner. The defendant claims the right of possession by reason of the levy of attachment against Lamb's right, title and interest in and to the automobile. After a jury-waived trial, the circuit court entered judgment against the defendant, granting recovery of possession to the plaintiff and assessing damages in the sum of five hundred dollars. The defendant appeals by writ of error.

The paramount question presented by the assignment of errors is whether or not upon the facts of the case the plaintiff's title to the registered automobile is subject to a prior attachment lien of the defendant as a matter of law.

The pertinent facts are herein briefly stated.

On May 6, 1947, Lamb purchased the automobile from its registered and legal owner, one J. M. Cowden, for $1400. Prior thereto, but on the same day, Lamb had borrowed this amount from the finance corporation together with an additional $300 to repay his pre-existing indebtedness to the finance corporation. As part of that loan transaction between Lamb and the finance corporation, Lamb immediately after purchase from Cowden delivered a bill of sale for the automobile to the finance corporation, signed an agreement of resale, conditioned upon the corporation's retention of title and the right to take possession on de-

fault, and with two cosigners executed a promissory note. Lamb retained possession of the automobile on its purchase and made no delivery of it to the finance corporation. Although the agreement of resale valued the automobile at $1000, it and the note expressed but one obligation on the part of Lamb to pay the total amount of the loan of $1700 in monthly installments of $70 and interest. The loan, bill of sale, agreement of resale and note were collectively nothing more than a "purely finance loan transaction" as characterized by the president of the finance corporation. On May 9, 1947, Lamb was registered as owner and the finance corporation as legal owner, the treasurer on that day having issued certificates of registration and ownership to them, respectively. Lamb held the certificate of registration. The finance corporation held the bill of sale, the conditional resale agreement and note as well as the certificate of ownership. Lamb defaulted on the agreement and note after making one payment of $70, but the finance corporation at no time took possession or even commenced to exercise any right to do so.

On August 26, 1947, the plaintiff, after being placed in physical possession of the automobile by Lamb pursuant to an agreement of absolute sale with him, paid to the finance corporation $1000 in purchase of the automobile. The finance corporation on written authority from Lamb immediately credited this money to Lamb's promissory note and delivered to the plaintiff the certificate of ownership after endorsing it. But the finance corporation did not execute a bill of sale to the plaintiff or deliver, transfer or assign to him the conditional resale agreement or the note, nor was such contemplated by Lamb, the finance corporation or the plaintiff. Upon receipt of the certificate of ownership so endorsed, the plaintiff endorsed it as "new legal owner or holder of mortgage, note, lease, etc." and thereupon presented it to the treasurer of the city and

county of Honolulu without securing the endorsement of Lamb. He requested that the treasurer issue to him new certificates of complete registered and legal ownership. This the treasurer refused to do without Lamb's endorsement on the certificate of ownership.

On September 4, 1947, the defendant seized the automobile under a writ of attachment in a creditor's action against Lamb. On September 29, 1947, after the creditor had obtained judgment, the defendant levied execution upon the automobile under a writ of execution and by public notice announced that he would sell at public auction on December 5, 1947, all of Lamb's right, title and interest in and to the automobile.

On November 6, 1947, the treasurer, after issuing to Lamb a duplicate certificate of registration on his claim that the original was lost, issued new certificates to the plaintiff, who by that time had secured Lamb's endorsement and had forwarded both the duplicate certificate of registration and the fully endorsed certificate of ownership.

On November 7, 1947, the plaintiff filed the instant action in replevin against the defendant.

Concededly Lamb, the finance corporation and the plaintiff acted in good faith throughout the various transactions in which they were involved as did the defendant on levy to secure Lamb's judgment debt.

The defendant, acting for Lamb's judgment creditor, makes two main contentions in justification of his seizure and detention. First, he contends from the undisputed evidence that the real character of the transaction of May 6, 1947, between Lamb and the finance corporation was security for a loan of money and constituted a mortgage. Second, he contends from the undisputed evidence that on August 26, 1947, the mortgage lien held by the finance corporation was extinguished and that before Lamb's title, unencumbered by mortgage, was effectively

transferred to the plaintiff on November 6, 1947, it became encumbered by the defendant's attachment lien on September 4, 1947, at the time of levy. The law permits a creditor to establish the mortgage character of his debtor's transaction, but he has the burden to prove that in fact it was a mortgage. (*The Manufacturers' Bank of Milwaukee* v. *Rugee,* 59 Wis. 221, 18 N. W. 251; *Caswell* v. *Keith,* 12 Gray [Mass.] 351; *Heryford* v. *Davis,* 102 U. S. 235; *Hart* v. *Barney & Smith Manuf'g Co.,* 8 Fed. 543.) Furthermore, it stands to reason that a holder of a lien second in rank to a mortgage lien has the right to show that the mortgage lien has been extinguished. (*Adams* v. *Allen,* 19 So. [2d] 578.)

Within the limitations of public policy, and so long as inhibitions of law are not violated, parties *sui juris* may devise their own contracts and fully effectuate their purpose and intention. All contracts are made, however, subject to valid provisions of law pertaining to their execution, construction and effect. Pertinent thereto and to the defendant's first contention, section 8871 of Revised Laws of Hawaii 1945 provides *inter alia* that "Every transfer of an interest in property, real or personal, made as security for the performance of another act or subject to defeasance upon the payment of an obligation, whether such transfer shall be made in trust or otherwise, is to be deemed a mortgage * * * ." This provision is comprehensive in scope and should be liberally construed. (See *Cary & Co.* v. *Hyer,* 91 Fla. 322, 107 So. 684; *Bonestell* v. *Western Automotive Finance Corporation,* 69 Cal. App. 719, 232 Pac. 734.) It is designed to insure effectuation of the genuine purpose and intention of the parties by subordinating thereto the ostensible form in which the transaction is finally couched. That purpose and intention is therefore to be ascertained, not alone from the form of the instruments employed to evidence the transaction, but

principally from the conduct of the parties and a fair consideration of the entire transaction as disclosed by the underlying facts and circumstances. An important, if not a controlling, guide in determining the intention of the parties is the purpose sought to be accomplished by them. Under section 8871, a bill of sale accompanied by an agreement of conditional resale, purporting to operate as an absolute sale with a conditional resale back to the grantor when wholly inconsistent with the surrounding facts and attendant circumstances, does not make absolute a transfer "made as security" for the repayment of a loan or "subject to defeasance upon the payment of an obligation." Thus if, in view of all the circumstances, the transaction resolves itself into security for a loan, it is a mortgage.

Independently of the provisions of an enlargement statute, as is section 8871, neither artifice nor form nor superficial declaration of intention will successfully obscure the true nature of the transaction. It is hardly necessary to cite authorities that a bill of sale, absolute in its terms, becomes a chattel mortgage upon proof by parol that it was made to secure a debt and that it is not only a mortgage between the parties to it, but also as to third parties who are effected with notice. (See *Nicklin* v. *Betts Spring Co.,* 11 Ore. 406, 5 Pac. 51.) On the other hand, the general test to distinguish a mortgage from a conditional sale is "If the transfer is intended to secure an existing indebtedness, it is a mortgage; but if the debt is extinguished, or if the money advanced is not by way of loan and the grantor merely has the privilege of refunding if he pleases and thereby entitling himself to a reconveyance, the transaction is a conditional sale." (*Guilford-Chester Water Co.* v. *Town of Guilford,* 107 Conn. 519, 141 Atl. 880.) Furthermore, in determining whether a transaction is a mortgage or a sale with the right of repurchase, "a test generally accepted as decisive is the mutuality and

reciprocity of the remedies of the parties; that is to say, if the grantee enjoys a right, reciprocal to that of the grantor to demand a reconveyance, to compel the latter to pay the consideration named in the stipulation for reconveyance, the transaction is a mortgage, while if he has no such right to compel payment, the transaction is a conditional sale. This test is a derivation of the consideration that personal liability is regarded either as the sine qua non of a mortgage, or as a factor whose existence or nonexistence points strongly to the fact that a conveyance is or is not a mortgage. 19 R. C. L. p. 266." (*Guilford-Chester Water Co.* v. *Town of Guilford, supra.*)

Applying these principles to the facts of this case, it is manifest that Lamb's debt of $1700, as the amount loaned by the finance corporation to him to purchase an automobile from a third party and repay his pre-existing debt, was not extinguished by the transfer by way of bill of sale accompanied by an agreement of conditional resale, but his debt remained constant and unconditional, the finance corporation having the right to compel Lamb to pay that debt in full reciprocal to the right of Lamb to demand reconveyance upon repayment, and any loss resulting from a destruction of the automobile falling on Lamb rather than on the finance corporation. Indicative of a purpose and intent to mortgage the automobile as security for the loan are the facts that Lamb retained possession and that the consideration for the bill of sale was grossly inadequate, there being no actual purchase price paid by the finance corporation and the consideration being its making of a loan for which Lamb and his two cosigners obligated themselves unconditionally to repay in full. If, as contended by the plaintiff, the transaction was an absolute sale with a simultaneous conditional resale apart from a loan secured by a promissory note, there would be the anomalous situation where a buyer purchases an auto-

mobile for $1400, sells it for an inadequate consideration, retains actual possession of the automobile and agrees to repurchase it for $1700, which is substantially higher than the original purchase price and the value placed upon it in his agreement of repurchase. The difficulty, however, is that the loan and its repayment were inextricably entwined with, and motivated, the execution of the bill of sale and agreement of conditional resale as parts of the same transaction. The conception of an actual relationship of vendor and vendee is wholly incompatible to the conduct of the parties, to their pre-existing and existing relationship of debtor and creditor and to the underlying facts and attendant circumstances of the entire transaction. The genuine purpose and intention of the parties are not to be so thwarted by the mere form of the documents. Such purpose is patently that of a mortgage. In correlation thereof, it is equally clear that the bill of sale, though absolute in form, was intended to operate as security for the loan and to be subject to defeasance on repayment of the loan to the same extent as the promissory note in accordance with the terms and conditions set forth in the contemporaneous agreement of resale as a separate instrument of defeasance. Thus although couched in the forms of sale and conditional sale, the transaction is neither the one nor the other, but by purpose and intent a mortgage within the provision of section 8871. Being so, the law and statutes of sales and conditional sales have no application, but the transaction at inception became impressed with the character of a mortgage and thereafter the relationship of the parties and their successors in interest, if any, became a mortgage one, governed by the substantive and adjective law of mortgages and the statutes regulating the operation of mortgages in so far as that law and those statutes apply to a mortgage of a registered motor vehicle. (See *Bonestell* v. *Western Automotive Finance Corpora-*

*tion, supra; Hughbanks* v. *Gourley,* 12 Wash. [2d] 44, 120 P. [2d] 523; *Olsen* v. *Legal Adjustment Bureau,* 142 Wash. 446, 253 Pac. 643.) This is true despite the language employed in, and the form of, the documents composing the transaction. (See *Alley* v. *Thompson* [Tenn. App.], 185 S. W. [2d] 910; *In re Hargrove,* 64 Fed. Supp. 103; *Raymond* v. *Horan,* 323 Ill. App. 120, 55 N. E. [2d] 99; *Hughbanks* v. *Gourley, supra; Teater* v. *Good Hope Dev. Corp.,* 14 Cal. [2d] 196, 93 P. [2d] 112.)

Prior to the enactment of section 8871, the decisions of this court were not in complete harmony upon the question of whether a mortgage conveyed title. Earlier cases held that it did. (See *Fessenden* v. *Cargo of Ship Charles,* 1 Haw. 161; *Nott* v. *Burgess,* 5 Haw. 420; *Hop Sing Co.* v. *Kam On,* 7 Haw. 138; *Cartwright* v. *Widemann,* 9 Haw. 685.) Later cases held that title to a mortgaged chattel did not pass to the mortgagee unless or until he takes possession. (*Ter.* v. *Tsunekichi,* 23 Haw. 813; *Peabody* v. *Leong Yen,* 26 Haw. 63.) It is no longer a question, however, of whether the common-law doctrine, which looked upon a mortgage as an absolute conveyance of title, subject to equity of redemption or to defeat on performance of condition subsequent, or whether the equity doctrine, which treated a mortgage merely as security for the payment of a debt or the performance of some duty, should prevail. That question has been resolved by the enactment of section 8871, which abrogated the common law and engrafted into the law the equity rule that the mortgagor is the real owner. The section declares that a mortgage "shall create a lien only as security for the obligation and shall not be deemed to pass title." (R. L. H. 1945, § 8871.) But where as here the mortgage is one of a "motor vehicle registered or required to be registered under the provisions of chapter 138," the creation of the lien without disturbing the mortgagor's title is conditioned upon "the transfer of

the mortgagor's interest" being "registered under the procedure provided in section 7342," otherwise the mortgage operates "only as a contract between the parties." (R. L. H. 1945, § 8876.*) At this juncture it is important to bear in mind that the mortgagor's interest to be transferred is not his title, but a property right to have the mortgaged vehicle subjected to the mortgage debt. The registration of the transfer of that interest is achieved by registering the name of the mortgagee as owner and that of the mortgagor as legal owner where the mortgage is accompanied by a change of actual possession or the name of the mortgagor as owner and that of the mortgagee as legal owner where the mortgage is not so accompanied. The registering of one of the mortgage parties as legal owner is the counterpart of actual possession and complementary to the registering of the other as owner to reflect the division of complete ownership as a matter of notice to third parties within the general legislative purpose of the motor vehicle law itself to provide a simple means of registering title and interest to and in mortgaged automobiles. Thus where the mortgagee acquires actual possession, he is registered as owner and the mortgagor as legal owner in satisfaction of the statutory condition for the creation of the mortgagee's lien. But where as in this case the mortgagor retains actual possession, he is registered as owner and the mortgagee as legal owner in satisfaction of the same statutory condition. In such a case, however, the registering of the mortgagee as legal owner serves a dual purpose. It not only operates as a part of the registration of the

---

* Sec. 8876. Registered motor vehicles. The mortgage shall operate only as a contract between the parties with respect to, and shall not create a lien upon, any motor vehicle registered or required to be registered under the provisions of chapter 138, unless and until the transfer of the mortgagor's interest shall be registered under the procedure provided in section 7342.

transfer of the mortgagor's interest to create the lien, but at the same time has the additional effect to validate the mortgage as against creditors and subsequent purchasers or mortgagees claiming under the mortgagor in good faith and for a valuable consideration, otherwise the mortgage would be void as against those third parties. (See *Security Nat. Bank of Trenton* v. *Ball,* 125 N. J. L. 640, 17 A. [2d] 552.) Such additional effect is by virtue of the operation of the special proviso of section 12758 of Revised Laws of Hawaii 1945.** This operation renders that section's general requirement of recordation for chattel mortgages, unaccompanied by a change of actual possession, inapplicable to such mortgages of motor vehicles and satisfies its legislative purpose therefor.

Consonant to the proposition that the making of a mortgage divides complete ownership into two component parts by which the interest of the mortgagee remains complementary to the title of the mortgagor during the existence of the mortgage, the motor vehicle law on the registration of a mortgaged motor vehicle treats the holder

---

** Sec. 12758. Chattel mortgage, etc. Every mortgage or other conveyance of personal property, not accompanied by immediate possession and followed by an actual and continued change of possession of the things mortgaged or conveyed, shall be void as against creditors of the mortgagor, and as against subsequent purchasers or mortgagees, in good faith and for a valuable consideration, unless such mortgage or other conveyance shall be recorded in the bureau of conveyances; provided that, where a mortgagee or transferee of a motor vehicle is registered as legal owner of such motor vehicle under part II of chapter 138, the mortgage or other conveyance by which the interest of such mortgagee or transferee was acquired shall not be deemed invalid as against any such creditors or subsequent purchasers or mortgagees by reason of failure to record the same under this section; but, in any case where a mortgage or other conveyance of such motor vehicle is not recorded in said bureau under this section, it shall be the duty of the mortgagee, or transferee, upon demand by any creditor, purchaser or other mortgagee of or from the mortgagor, to disclose such mortgage or other conveyance to such demandant.

of one part of ownership equally with the holder of the other. It accomplishes this by employing a definition of legal owner, which applies with equal force to a mortgagor as it does in the alternative to a mortgagee to be, respectively, "a person who holds the legal title to a motor vehicle or a mortgage thereon." (§ 7335, R. L. H. 1945.) Consistent therewith, the procedure of transfer prescribed by section 7342 of the motor vehicle law does not apply specifically to the title or interest of only the registered legal owner of a mortgaged motor vehicle but applies generally to "the title or interest of *a legal owner* [italics ours]," the term "a legal owner" being so employed advisedly to denote any "person whose title or interest is to be transferred." Synchronizing therewith, the alternative application of the term's statutory definition to the mortgage parties renders section 7342 operative to impose upon a mortgagor on subsequent transfer of his title the same duties that it imposes upon a mortgagee on subsequent assignment of his mortgage interest whether the transfer or assignment is to be made separately from, or in conjunction with, the other. Nevertheless, the designation of a mortgagee to be a legal owner is a misnomer and section 7335 by attaching the statutory term of legal owner upon a mortgagee distorts the sense in which that term is ordinarily employed. (See *In re Senetos,* 29 F. [2d] 854.) Such distortion, however, does not disturb the term's applicability to the mortgagor holding the legal title, but serves the legitimate purpose of enabling the mortgagee to be registered as the statutory legal owner holding the mortgage in protection of his interest against third parties claiming under the mortgagor in lawful possession.

Operating as they do in harmony with each other, the cognate provisions of sections 8871, 8876, 12758, 7335 and 7342 control the division of complete ownership or state of title and interest of and in the mortgaged motor vehicle

which existed between Lamb and the finance corporation when they were registered on May 9, 1947, as owner and legal owner thereof, respectively. On applying those provisions to the facts of this case, it is manifest that Lamb was a legal owner, albeit not the registered one, holding the legal title to the automobile in lawful possession with the right thereto as mortgagor, and that the finance corporation was the registered "legal owner" holding a security lien on the automobile as mortgagee, but having neither title nor the right of possession.

Intervening before the levy of attachment was the transaction of August 26, 1947, between the plaintiff and the finance corporation. This transaction was not a contractual one between them but rather involved Lamb's agreement of absolute sale to the plaintiff. Both the plaintiff and the finance corporation acted as implied agents of Lamb to further his intended transfer of unencumbered title and did so on his written authority. The performance of the finance corporation will be considered first and then that of the plaintiff in conjunction with the performance of Lamb under his agreement of sale.

The finance corporation's performance in furthering Lamb's intended transfer of unencumbered title was completed on August 26, 1947, after which the finance corporation had no further interest in the automobile. It can not be deemed to be an assignment of the mortgage (see *Haynes* v. *Gwin,* 137 Ark. 387, 209 S. W. 67), nor a case of "a legal owner * * * assigning his title or interest * * * to another legal owner * * * without the consent of and without affecting the interest of the holder of the certificate of registration" as contemplated by the provisions of subdivision 7 of section 7342 where as here the finance corporation had the consent of such holder and his interest was not only to be affected but supposed to be absolutely transferred. (See *San Joaquin Valley Securities Co.* v. *Prather,*

123 Cal. App. 378, 11 P. [2d] 45.) On the contrary, it constituted active assistance of a chattel mortgagee in the sale by its mortgagor of the mortgaged property as well as its consent to that sale, the mortgagee under the mortgagor's written authority accepting the full proceeds of sale and value of the property, applying them to the mortgage debt and surrendering to the purchaser in physical possession its muniment of mortgage interest in the property as evidenced by its endorsement and delivery of the certificate of ownership. The applicable rule is that such conduct amounts to a waiver of the mortgage lien on the mortgaged property as against the purchaser and creditors of the erstwhile mortgagor. (As to purchasers see *Great Northern State Bank of Ryan,* 292 Fed. 10; *Farmers' Nat. Bank* v. *Missouri Livestock Commission Co.,* 53 F. [2d] 991; *First Nat. Bank & Trust Co.* v. *Stockyards Loan Co.,* 65 F. [2d] 226. As to creditors of the mortgagor see *Andrews* v. *Dun,* 15 Tex. Civ. App. 124, 39 S. W. 209; *National Citizens Bank* v. *McKinley,* 118 Minn. 162, 136 N. W. 579. For collection of authorities see 97 A. L. R. 646, anno.) Implicit in the application of that rule, the mortgage lien was extinguished as far as Lamb's purchaser and creditors were concerned and hence it is not necessary to determine whether a mortgagor on default has an attachable interest, the payment and application of the full purchase price and value of the mortgaged property to the mortgage debt by the implied agents of the mortgagor not only curing the default but satisfying the mortgage obligation itself. (But see *Wilkerson* v. *Stasny & Holub* [Tex. Civ. App.], 183 S. W. 1191; *Farrow* v. *Ocean County Trust Co.,* 121 N. J. L. 344, 2 A. [2d] 352.) Had a conditional sale from the finance corporation as vendor to Lamb as vendee existed under the same circumstances, the vendee's obligation of contract, as in effect reduced by the parties to the equivalent of the agreed value of the conditionally sold auto-

mobile, would have been satisfied in termination of the contract and the actualities would have been the same as those on the extinguishment of the mortgage lien as far as the plaintiff and the defendant are concerned. The title reserved by the vendor in such a case would have automatically passed to the vendee under the contract and by operation of law without any further consent or act on the part of the vendor, its conduct being entirely repugnant to any further retention of title. (See *Walker* v. *Houston,* 215 Cal. 742, 12 P. [2d] 952; *National Cash R. Co.* v. *South Bay C. H. Ass'n.,* 64 N. Y. Misc. 128, 118 N. Y. S. 1044; *Crompton* v. *Pratt,* 105 Mass. 255; *Currier* v. *Knapp,* 117 Mass. 324; *Englehart* v. *Sage,* 73 Mont. 139, 235 Pac. 767; *Carpenter* v. *Scott,* 13 R. I. 477.) Thus from either view, until Lamb's agreement of absolute sale became effective to pass title to the plaintiff, Lamb held the absolute title to the automobile and nothing effecting the automobile remained in the finance corporation other than the bare registration of its name as legal owner. While Lamb held that title, he clearly had an attachable interest. He, however, was duty bound under his agreement of absolute sale to avoid the contingency of attachment in the quickest possible manner by placing the plaintiff immediately in a position to effectuate the intended transfer, and the plaintiff, on being so placed, then would have had the burden of promptly achieving the transfer's objective, any delay on his part being at his own peril. To ascertain whether that obligation and burden were timely satisfied and sustained requires a determination of the intended transfer's validity and effectiveness to defeat the subsequent levy of attachment against Lamb's property by his judgment creditor for whom the defendant is acting. That such transfer was neither valid nor effective to defeat the levy is demonstrated by an application of pertinent provisions of the motor vehicle law and section 12758 of the

Revised Laws of Hawaii 1945 to the facts of the case.

Subdivision 1 of section 7342 of the motor vehicle law provides that "Upon a transfer of the title or interest of a legal owner in or to a vehicle registered under the provisions of this part, the person whose title or interest is to be transferred and the transferee shall write their signatures with pen and ink upon the certificate of ownership issued for the vehicle, together with the address of the transferee in the appropriate space provided upon the reverse of the certificate." Subdivision 2 thereof provides that "the transferee shall forward both the certificate of ownership so endorsed and the certificate of registration to the treasurer, who shall file the same." Subdivision 4 thereof provides that "The treasurer, upon receipt of the certificate of ownership properly endorsed and the certificate of registration of such vehicle, shall register such vehicle, and shall issue to the owner and legal owner entitled thereto by reason of such transfer a new certificate of registration and certificate of ownership, respectively, in the manner and form hereinabove provided for original registration."

Applying the procedural requirements of subdivisions 1 and 2 to the intended transfer to the plaintiff on August 26, 1947, of the absolute title of Lamb who as a legal owner held the legal title unencumbered by mortgage, concededly neither Lamb nor the plaintiff complied with them, Lamb not endorsing the certificate of ownership, which precluded the plaintiff from properly forwarding it to the treasurer. These requirements are mandatory and necessitate strict compliance. (See *Hilo Fin. & T.* v. *De Costa,* 34 Haw. 407.) A failure to follow them carries a penalty of its own. It prevents reregistration of the automobile as a matter of recordation of the intended transfer, forestalling the treasurer's filing of the old certificates under subdivision 2 and his issuance of new ones to supersede the

old under subdivision 4 as well as conclusively negativing both actual and constructive notice. In correlation thereto, the issuance of new certificates is the condition precedent to the transfer's validity and their nonissuance renders the transfer itself a nullity as a matter of law. This is evinced by the strong language employed in subdivision 5. That subdivision reads: "Until the treasurer shall have issued the new certificate of registration and certificate of ownership as hereinbefore in subdivision (4) provided, delivery of such vehicle shall be deemed not to have been made and title thereto shall be deemed not to have passed, and the intended transfer shall be deemed to be incomplete and not to be valid or effective for any purpose." The above provision is clear and unambiguous. It means exactly what it says. (*Swartz* v. *White*, 80 Utah 150.)

No new certificates having been issued pursuant to subdivision 4 at the time of, or prior to, the levy of attachment, it is apparent from the provisions of subdivision 5 that the plaintiff in the eyes of the law had then no title to, interest in, or delivery of possession of, the automobile. The intended transfer of absolute title from Lamb, the vendor therefore, as a matter of law was a "conveyance of personal property, not accompanied by immediate possession and followed by an actual and continued change of possession" and as a matter of fact a conveyance of a motor vehicle where the plaintiff as transferee was not "registered as legal owner of such vehicle under part II of chapter 138" within the meaning of section 12758, which declares that such a "conveyance shall be void as against creditors of the mortgagor." This statutory declaration has been construed by this court to afford equal protection and apply with equal force to creditors of the vendor by necessary implication. (*Chong Yet You* v. *Rose*, 23 Haw. 220.) Hence the intended transfer from Lamb to the plaintiff on August 26, 1947, was invalid generally for any pur-

pose under the motor vehicle law and void particularly as against Lamb's creditors under section 12758. This state of affairs persisted until November 6, 1947. The intended transfer, therefore, had no legal force and effect upon the intervening levy of attachment on September 4, 1947.

Lamb is not a party to these proceedings. Consequently the question of the plaintiff's recovery against him is not before this court. Suffice it to say that the plaintiff at the time of levy, irrespective of what rights in law and equity he may have had or now has against Lamb, stood as a total stranger to any special property interest in or to the automobile acquired by the defendant to secure the debt of Lamb's judgment creditor. Being a stranger, the plaintiff possessed no rights that would prevail over the legal effect of the defendant's levy of attachment, nor had Lamb any such rights other than the right to satisfy the judgment debt, the plaintiff on effective transfer of Lamb's title thereafter being in no better position.

The seizure of the automobile by the defendant under writ of attachment by mesne process in conformity with the provisions of section 10142 of Revised Laws of Hawaii 1945 was lawful, acting as he did in good faith and without notice, actual or constructive, of the intended transfer as a matter of law in the absence of the issuance of new certificates to the transferee. Being lawful, the defendant acquired a special property interest in the automobile which created a valid attachment lien that was incapable of being dislodged by subsequent transfer of Lamb's title to the plaintiff. Nor is the defendant's detention of the automobile wrongful, the automobile being held in *custodia legis* upon a completed attachment as provided by section 10149, subdivision 2, Revised Laws of Hawaii 1945, and upon a perfected attachment after judgment under section 10172, Revised Laws of Hawaii 1945.

On November 6, 1947, the plaintiff acquired Lamb's

title which, although freed of the mortgage lien held by the finance corporation before August 26, 1947, was and now is subject to the intervening attachment lien placed on the automobile by the defendant on September 4, 1947, there being nothing to show that it has been disturbed or that the defendant's right of possession previously held by Lamb has been impaired. This conclusively answers in the affirmative the paramount question of title to the automobile subject to a prior attachment lien as presented by the assignment of errors and demonstrates that the plaintiff did not prove that he has the right to immediate possession entitling him to recover in replevin.

Judgment reversed and the cause remanded below with instructions to the trial judge to enter a new judgment in favor of the defendant consistent with this opinion.

*D. G. Ridley* for defendant, the plaintiff in error.

*W. C. Ingman* for plaintiff, the defendant in error.

*Smith, Wild, Beebe & Cades* and *J. R. Cades* for Bishop National Bank at Honolulu, *amicus curiae*.

### DISSENTING OPINION OF PETERS, J.

I respectfully dissent. There is no evidence to sustain the findings that Lamb borrowed the purchase price of the automobile "after" he had purchased the same from Cowden. On the contrary, the evidence is to the effect, and the trial judge found, that the finance corporation advanced the full purchase price of the automobile to Lamb and the automobile was purchased by the funds so advanced. The contract between Cowden and Lamb was not a contract of sale but was an executory contract to sell for cash and hence incomplete until the payment of the price. The transfer of the property in the car by Cowden was conditional upon the actual payment of the price by Lamb to Cowden. It is true that the evidence is open to the inference that Lamb was furnished with the muniments of

title necessary for him to execute a bill of sale to the finance corporation and to enable it in turn to have itself registered as the legal owner, in accordance with the law pertaining to the registration of motor vehicles. But whatever was furnished Lamb it was ineffective to transfer title to Lamb and was not intended to be effective to pass title to and through him until Cowden was paid the price. Title never passed out of Cowden until he was paid.

The car was not delivered by Cowden to Lamb until Cowden had been paid. After Cowden was paid it was immaterial whether Cowden delivered the car to Lamb through the finance corporation or did so directly. Under the conditional sale contract Lamb was entitled to possession.

Lamb never had legal title to the car in controversy. Never having had legal title, Lamb could not create a mortgage lien upon the legal title. This is not the case of the legal owner of an automobile borrowing money on a car of which he has both title and possession and the security for repayment takes the form of a conditional sale. The distinction between such a case and the case at bar rests upon the postulate that if the putative vendee has both legal title and possession prior to the execution of the conditional sale contract the transaction while enforceable as between the parties is, as to third parties, constructively fraudulent, irrespective of the terms of sale.

Nor can I subscribe to the unqualified acceptance of the proposition that an existing creditor without more may vary the terms of a written instrument and by extrinsic evidence show that a conditional sale contract is in fact a mortgage. The majority declares "The law permits a creditor to establish the mortgage character of his debtor's transaction * * * ." To this declaration arises the legitimate rejoinder "When and under what circumstances?" The only support for this declaration is "All contracts are

made * * * subject to valid provisions of law pertaining to their execution, construction and effect." To me such generalities are not sufficient to support a finding that a conditional sale contract is, as a matter of law, a chattel mortgage.

Conditional sale contracts are not constructively fraudulent in this jurisdiction. On the contrary, by Revised Laws of Hawaii 1945, section 9144, included in chapter 176 of the revision, it is provided that "Every provision in a conditional sale reserving property in the seller after possession of the goods is delivered to the buyer shall be valid as to all persons, except as hereinafter in this chapter otherwise provided." And it is not otherwise provided in the chapter. So far as I know, the only ground of attack available to an existing creditor is that the conditional sale was resorted to with the intent to hinder, delay or defraud creditors. The title to the car was in the finance corporation and it possessed the legal capacity to sell the same conditionally to Lamb. The bill of sale from Lamb to the finance corporation and the conditional sale from the latter to the former was recorded in strict compliance with the provisions of Revised Laws of Hawaii 1945, section 12758, and of its contents the attaching creditor had constructive notice. There is no evidence showing or tending to show, in fact there is not the slightest intimation, that the method resorted to to finance the loan was intended to hinder, delay or defraud creditors. Under the circumstances, the attaching creditor had no rights superior to the finance corporation.

To say that the transaction was one of security is beside the point. The primary function of a conditional sale contract is security. But every conditional sale contract is not a mortgage as to existing creditors.

Lamb had no attachable interest in the car at the time of the attachment nor since. The mutual rescission of

the conditional sale contract and sale to plaintiff was effected prior to attachment and operated to divest Lamb of all interest in the car. Nothing further was required to make Lamb's surrender or waiver of his rights as a conditional buyer legally effective. The provisions of subdivision 5 of Revised Laws of Hawaii 1945, section 7342, do not apply to the surrender by a conditional buyer in default to the conditional seller and legal owner of a motor vehicle of the rights of the former under a conditional sale to him by the latter of said motor vehicle. The provisions of section 7342, subdivision 5, *supra,* apply only where there is a "conveyance" as that term is used in section 12758, the symbolic substitute of which is "delivery" or a "transfer" of "title" as those words are used in the subdivision. The provisions of subdivision 1 of section 7342 are restricted to the "title" or "interest" of a "legal owner." The respective definitions and connotations of the words "conveyance," "transfer" and "title" limit their application to transfers of "legal title." The legal title was and always had been in the finance corporation, the conditional seller, and the interest of Lamb, the conditional buyer, whether considered contractual rights or property rights or both, does not constitute "legal title." Under both the common law and the statute law of Hawaii pertaining to conditional sales "legal title" is retained by the conditional seller. It is to the "legal title" that the provisions of section 7342 relate and it is with the legal title that the limitations and restrictions of subdivision 5 of the section are concerned as a means of protection against theft, the admitted purpose of the requirements of the registration of legal ownership of motor vehicles. The case of *Hilo Fin. & T. Co.* v. *De Costa,* 34 Haw. 407, is clearly distinguishable and does not apply. The issue of an attachable interest in the judgment creditor Lamb relates to Lamb, the former conditional buyer alone and not to that of the finance corpora-

tion, the former conditional seller and owner of the legal title.

The majority further concludes that "Had a conditional sale from the finance corporation as vendor to Lamb as vendee existed under the same circumstances, the vendee's obligation of contract, as in effect reduced by the parties to the equivalent of the agreed value of the conditionally sold automobile, would have been satisfied in termination of the contract and the actualities would have been the same as those on the extinguishment of the mortgage lien as far as the plaintiff and the defendant are concerned. The title reserved by the vendor in such a case would have automatically passed to the vendee under the contract and by operation of law without any further consent or act on the part of the vendor, its conduct being entirely repugnant to any further retention of title." This conclusion is based upon a factual hypothesis that has no evidence for its support. Sale to the plaintiff was made by the finance corporation directly to him. It was the owner of the legal title to the car which enabled it to make delivery directly to him consistently with the agreement of all the parties concerned. Nor was the conditional sale contract completed by the payment of the purchase price paid by the plaintiff.

There remained $700 to be paid under the conditional sale contract before title could vest in Lamb. The authorities cited to support the quoted excerpt are merely to the effect that upon completion by the conditional vendee of the conditional sale contract title vests in him. But Lamb was a conditional vendee in default, had no title, on the contrary, merely a right of possession and his surrender to the conditional vendor of whatever interest he had in the property subject to the conditional sale divested him of the only right he had, that of the bare possession. To say that "Thus from either view, until Lamb's agreement of absolute sale became effective to pass title to the plaintiff,

304

Lamb held the absolute title to the automobile and nothing effecting the automobile remained in the finance corporation other than the bare registration of its name as legal owner" is contrary to the facts and a misapplication of the law of conditional sales.