**James B. JOHNSTON, Plaintiff and Respondent,**

v.

**Maureen H. SIMPSON and Wayne Simpson, dba The Flight School, Defendants and Appellants.**

**No. 16859.**

Supreme Court of Utah.

Nov. 19, 1980.

Frank S. Warner of Warner, Marquardt & Hasenyager, Ogden, for defendants and appellants.

---

**9.** *Grant Investment Company v. Fuller & Company*, 171 Colo. 86, 464 P.2d 859, 861 (1970).

John T. Anderson of Roe & Fowler, Salt Lake City, for plaintiff and respondent.

HALL, Justice:

Defendants appeal the judgment of the district court that a written contract for the purchase of an aircraft be rescinded and that defendants make restitution of the purchase price paid.

Defendants Maureen and Wayne Simpson operate a business known as The Flight School at the Ogden Municipal Airport. Besides offering flight instruction, the business rents and sells new and used aircraft. Plaintiff became acquainted with defendants through his neighbor who was employed by defendants as a flight instructor.

Upon the completion of a basic flight training program, plaintiff had several discussions with Mrs. Simpson concerning the purchase of an aircraft. On July 29, 1977, plaintiff ordered a 1978 Cessna. He signed a form entitled "retail purchase order" which provided for a down payment of $3,000 on a total purchase price of $41,125. Paragraph 5 of the Terms, Conditions, Warranty and Limitations of Liability reads as follows:

> Title to aircraft products herein sold and purchased shall pass to Purchaser when full purchase price shall have been paid to Dealer or upon Dealer's accepting other financial arrangements satisfactory to Dealer in lieu of full purchase price. All risk of loss shall be on Purchaser from and after receipt of possession of the aircraft products.

Defendants ordered the aircraft from the general Utah Cessna dealer, Trans-West Aircraft Sales, in Salt Lake City. Trans-West, in turn, ordered from its distributor, Skyways, Inc., of Portland, Oregon, who then placed the order with Cessna. Financing by the distributor/dealers was typically arranged through Cessna whereby a dealer is given physical possession of the aircraft subject to a security interest. On October 14, 1977, Skyways granted Cessna a security interest in the aircraft it had ordered for plaintiff.[1] On October 17, 1977, Trans-West granted a similar security interest to Skyways.[2]

Also on October 17, 1977, a second retail purchase order was executed by plaintiff and defendants. The provisions of this second order were identical to those of the first, with one minor exception relating to radio installation. Plaintiff paid the balance of the purchase price in cash and arranged to go to the Cessna factory in Wichita, Kansas, to personally take delivery of the aircraft. Plaintiff took delivery of the aircraft in Wichita two or three days later.

In order to use an airplane, a valid application for registration or a certificate of registration is required. To obtain a certificate, the following documents must be recorded with the Federal Aviation Administration (FAA): an application, a bill of sale between the dealer and its supplier, and a bill of sale between the dealer and the purchaser.[3]

Mrs. Simpson advised plaintiff that he could expect his certificate of registration within about 90 days from the date of purchase. On December 14, 1977, plaintiff contacted Mrs. Simpson to determine the status of his application for issuance of the certificate. Mrs. Simpson advised him that "the paperwork had been filed and that it was in the process."[4] Again on February 9, 1978, plaintiff inquired of Mrs. Simpson about his certificate. He later advised Trans-West of his difficulty in obtaining the certificate. Mrs. Simpson thereafter made inquiry with the FAA to ascertain the

---

1. The security interest was recorded on October 26, 1977, and released on November 16, 1977.

2. This security interest was also recorded on October 26, 1977, but was not released until April 20, 1978.

3. Apparently it is the purchaser's responsibility to see that the documents are properly recorded, but it is the custom in the industry that when an airplane is purchased from a dealer, the dealer forwards to the FAA the necessary information.

4. She testified that it was mailed on October 17, the date of purchase.

nature of the problem and learned that the FAA had no record of having received the bills of sale.

On April 10, 1978, the FAA received a second registration application on behalf of plaintiff. Defendants also prepared and sent to the FAA duplicate bills of sale which were received on July 6, 1978. The certificate of registration was still not issued, apparently because of wording or spelling changes on the bills of sale. Plaintiff contacted defendants again on July 9, 1978, September 24, 1978, and October 26, 1978, to inquire as to the status of the registration. He was assured that the documents had been resubmitted and would be straightened out.

On January 25, 1979, plaintiff sought to rescind his purchase of the airplane on the premise that he had not received good title. On February 15, 1979, a third set of bills of sale were submitted to the FAA. A certificate of registration in plaintiff's name was approved for issuance on February 21, 1979, and received by plaintiff on March 9, 1979. The complaint requesting rescission based upon failure to receive good title was filed on March 21, 1979. Nevertheless, plaintiff continued to use the airplane [5] and to loan it to his neighbor, allegedly to keep it from "becoming damaged by nonuse."

Plaintiff argued at trial that his warranty of title was breached in two respects: (1) by defendants' failure to perform their promise to promptly and properly register and record title with the FAA prior to January 25, 1979; and (2) by defendants' failure to convey title to plaintiff free and clear of two security interests granted in favor of third parties. After hearing the evidence, the trial court ruled in favor of plaintiff on both points. The court granted plaintiff's claim for rescission of the contract and directed defendants to make restitution in the amount of $41,125.

The trial court ruled that the warranty of title was breached by defendants' failure to perform their promise to promptly and properly register and record title with the FAA. By the Federal Aviation Act of 1958,[6] the federal government has preempted the field of recordation of conveyances or instruments affecting title to aircraft. It is generally accepted, however, that state law continues to determine the validity of such conveyances or instruments as well as ownership or title.[7] The federal act itself limits the effect of aircraft registration as follows:

> Such certificate shall be conclusive evidence of nationality for international purposes, but not in any proceedings under the laws of the United States. *Registration shall not be evidence of ownership of aircraft in any proceeding in which such ownership by a particular person is, or may be, in issue.* [Emphasis added.] [8]

Ownership is therefore a totally separate question from registration. Plaintiff has paid the total purchase price of the aircraft and has possession of it. U.C.A., 1953, 70A-2-401 provides, in pertinent part, as follows:

> (1) . . . Subject to these provisions and to the provisions of the chapter on Secured Transactions (chapter 9), title to goods passes from the seller to the buyer in any manner and on any conditions explicitly agreed on by the parties.
>
> (2) *Unless otherwise explicitly agreed title passes to the buyer at the time and place at which the seller completes his performance with reference to the physical delivery of the goods,* despite any reservation of a security interest and even though a document of title is to be delivered at a different time or place; and in particular and despite any reservation of a security interest by the bill of lading. [Emphasis added.]

Because plaintiff did not show that it was explicitly agreed otherwise, he is deemed to

---

**5.** Plaintiff acknowledged that he used the airplane to fly to California on July 9 or 10, 1979, for personal business.

**6.** 49 U.S.C.A., §§ 1301–1542.

**7.** 49 U.S.C.A., § 1406; see also, *Haynes v. General Electric Credit Corp.*, 432 F.Supp. 763 (W.D. Va. 1977) and Annot., 22 A.L.R.3d 1270, 1277 (1968) and cases cited therein.

**8.** 49 U.S.C.A., § 1401(f).

have taken clear title at the time he took delivery of the aircraft.

 This is not to suggest that plaintiff has no remedy for the delay of the registration. If it can be shown that defendants contractually agreed promptly to secure the registration, and that plaintiff was damaged in some way by defendants' failure to so register the aircraft, plaintiff may well have a valid cause of action for breach of contract. Such a claim would not, however, interfere in any way with plaintiff's right of ownership.

 Plaintiff's claim that the title was defective due to the existence of two security interests likewise fails. U.C.A., 1953, 70A–2–312 provides, in pertinent part, as follows:

(1) Subject to subsection (2) there is in a contract for sale a warranty by the seller that

(a) The title conveyed shall be good, and its transfer rightful; and

(b) the goods shall be delivered free from any security interest or other lien or encumbrance of which the buyer at the time of contracting has no knowledge.

(2) A warranty under subsection (1) will be excluded or modified only by specific language or by circumstances which give the buyer reason to know that the person selling does not claim title in himself or that he is purporting to sell only such right as he or a third person may have.

At the time plaintiff took delivery, the security interests complained of remained unrecorded. Furthermore, the chattel mortgages ran only between Cessna and its distributor/dealers. Plaintiff testified that he had no knowledge that the sale was in violation of any security interest purportedly retained by any third party. Plaintiff is therefore a "buyer in ordinary course of business."[9] U.C.A., 1953, 70A–9–307(2) provides:

(2) In the case of consumer goods, a buyer [in the ordinary course of business] takes free of a security interest even though perfected if he buys without knowledge of the security interest, for value and for his own personal, family or household purposes unless prior to the purchase the secured party has filed a financing statement covering the goods.

Specifically in regard to aircraft, 49 U.S.C.A. § 1403(c) provides that no security interest which may be filed with the FAA shall be valid against any person other than the person by whom the security interest is made or given or one having actual notice, until it is filed with the FAA. In the instant case, the subject chattel mortgages were not filed with the FAA until October 26, 1977, several days after the plaintiff had paid for and taken delivery of the aircraft. The unrecorded chattel mortgages (which were, in any event, subsequently released) therefore have no effect on plaintiff's title or ownership.[10]

Reversed. Costs to defendants.

CROCKETT, C. J., WILKINS and STEWART, JJ., and MAURICE HARDING, Ret. District Judge, concur.

MAUGHAN, J., does not participate herein.

---

**9.** U.C.A., 1953, 70A–1–201(9).

**10.** In Accord: *State Security Co. v. Aviation Enterprises, Inc.*, 355 F.2d 225 (10th Cir. 1966).