In re INTERNATIONAL COINS & CURRENCY, INC., Debtor.

INTERNATIONAL COINS & CURRENCY, INC.,

v.

BARMAR CORPORATION,

and

BARMAR CORPORATION, Plaintiff,

v.

INTERNATIONAL COINS & CURRENCY, INC., Defendant.

Bankruptcy No. 81–00023.
Adv. No. 81–0131.

United States Bankruptcy Court,
D. Vermont.

March 15, 1982.

Peter B. Brittin, Montpelier, Vt., for debtor.

Robert J. Kurrle, Montpelier, Vt., for Barmar Corp.

## FINDINGS, MEMORANDUM
## AND ORDER

CHARLES J. MARRO, Bankruptcy Judge.

The Debtor filed an Application for Order Permitting it to Reject an Executory Contract with Barmar Corporation. In response, Barmar Corporation submitted a Complaint against the Debtor in an adversary proceeding to recover rent under a lease between the parties and damages allegedly caused to the premises by the Debtor. The Application of the Debtor for rejection of the lease and the Complaint of Barmar Corporation for damages were consolidated and heard with the following appearances:

From the records in the case, the evidence adduced at the hearing and the exhibits received, the following Facts have been established:

International Coins & Currency, Inc., filed its Petition for Reorganization under Chapter 11 of the Bankruptcy Code on February 9, 1981. On that date there was in existence a lease between the Debtor and Barmar executed on July 1, 1980. Under this lease Barmar, as lessor, leased to the Debtor, as tenant, certain space consisting of 12,230 square feet on the second, third and fourth floors of the Hillside Building, so-called, at the corner of Court Street and Hillside Avenue in the City of Montpelier, Vermont, and so much of the first floor thereof as was not leased to Spectrum Research, Inc., together with the right to use any and all of the basement and 44 parking spaces in an adjacent lot.

This lease was for a term of two years beginning November 1, 1980 and ending October 31, 1982, with a fixed rental of $6.73 per square foot per annum for 12,230 square feet of floor space, said rental amounting to $6,857.00 monthly beginning November 1, 1980. The lease also contained an option on the part of the tenant to extend the lease for a one-year term but this provision is not relevant since the original term had not expired on the date of the filing of the Petition for Relief by the Debtor.

The lease contained numerous covenants including the following:

"The Tenant shall surrender the leased space at the end of the term, or any renewal thereof, in the same condition as when the Tenant accepted possession excluding reasonable wear and tear. All permanent partitions installed and permanent improvements made to the premises which are not subject to removal without causing damage shall inure to the benefit of the Lessor."

The lease also contained a provision that the Debtor as a tenant would be liable for any reasonable costs or expenses, including reasonable attorney's fees, incurred by the Lessor in enforcing any terms of this lease, or in pursuing any legal action for the enforcement of either Lessor's rights enumerated in this lease, remedies authorized by law, or both.

By an Amendment dated July 1, 1980 and effective December 1, 1980, the rent was reduced to $6,567.00 since the landlord was no longer to provide janitorial service.

The Debtor continued in possession of the Barmar premises under its lease but notified Barmar by letter dated April 28, 1981 that it would vacate the premises by May 4, 1981 and, in fact, the Debtor did give up possession by that date. The decision to vacate the Barmar premises was made by

the Debtor's President, and it was based on the desire to locate the activities of the Debtor under one roof for closer supervision rather than three different locations where it did business prior to the filing of the Petition under Chapter 11. In addition, by relocating in the old A & P warehouse building in Montpelier, the Debtor was able to reduce its rent expense from $6,567.00 to $1,700.00 a month. In relocating, however, the Debtor was obliged to expend a considerable sum by way of improvements at the new location before it could be occupied for the conduct of business.

During the occupation of the Barmar premises by the Debtor and especially after the filing of its Petition under Chapter 11 it damaged the premises extensively, far in excess of reasonable wear and tear, and the cost incurred by Barmar in repairing the damage is $19,395.25. Barmar further incurred legal expenses of $2,063.80 in the prosecution of its claim against the Debtor and this charge appears to be reasonable.

After the premises were vacated by the Debtor Barmar did lease 7,700 square feet of space on the second and third floors plus 500 square feet of storage space on the first floor to the State of Vermont for five years beginning August 1, 1981 at a monthly rental of $3,997.50.

## DISCUSSION

The Debtor, through its president as a witness, conceded that there had been damage to the premises leased from Barmar but it tried to establish that it was in the vicinity of $2,000.00. The President testified that he had had the damage appraised by another representative of the Debtor who apparently was qualified to testify as to the amount of actual damage sustained. However, it appeared that a proper foundation was not laid for the receipt of testimony on this point from the President and for that reason this testimony was excluded. The representative of the Debtor who actually appraised the damage was not called as a witness. Under the circumstances the Court is satisfied that the actual damage sustained by Barmar is $19,395.25.

The Debtor contends that by virtue of § 502(g) any claim for damages or for rent arising from the rejection of an unexpired lease is relegated to a pre-petition unsecured claim and that Barmar is not entitled to the allowance of its claim as an administrative expense. § 502(g) reads as follows:

"A claim arising from the rejection, under section 365 of this title or under a plan under chapter 9, 11, or 13 of this title, of an executory contract or unexpired lease of the debtor that has not been assumed shall be determined, and shall be allowed under subsection (a), (b), or (c) of this section or disallowed under subsection (d) or (e) of this section, the same as if such claim had arisen before the date of the filing of the petition."

Barmar, on the other hand, argues that the Debtor did not exercise sound business judgment in terminating its lease without prior notice so that the party could possibly negotiate for a more favorable lease to the Debtor in view of its depressed financial condition. Notice was first given to Barmar of the Debtor's intent to vacate the premises on April 28, 1981 after the Debtor had already made its decision to move by May 4, 1981.

In view of this Barmar contends that the Debtor did not exercise good business judgment and, therefore, is not entitled to a rejection of the lease. As a result, it feels that it is entitled to all of the damages sustained including rent which was payable during the entire term of the lease.

The Bankruptcy Courts generally have applied the "business judgment" test in reorganization cases to determine when an executory contract may be rejected. *Radix Organization, Inc., et al., v. Mack Trucks, Inc., et al.*, 602 F.2d 45 (1979) (2nd Cir. USCA); *Matter of Tilco, Inc.*, 558 F.2d 1369 (10th Cir. 1977); *King v. Baer*, 482 F.2d 552, 557–58 (10th Cir.); *In re High Fliers, Ltd.*, 7 BCD 747; *In re Marina Enterprise*, Bkrtcy., 14 B.R. 327.

Even though the Courts generally have applied the "business judgment" test in determining whether an executory contract

should be rejected the Court must, in the exercise of its discretion, decide whether there should be a rejection. This was pointed out in the case of *In re Minges*, 2 Cir., 602 F.2d 38, 43 as follows:

"We believe that such a flexible test for determining when an executory contract may be rejected, however termed (and 'business judgment' is as good a label as any), is most appropriate. For in bankruptcy proceedings, the trustee, and ultimately the court, must exercise their discretion fairly in the interest of all who have had the misfortune of dealing with the debtor. A rigid test, permitting rejection only where the executory contract will cause a net loss to the debtor's estate if performed, might work a substantial injustice in cases where it can be shown that the non-debtor contracting party will reap substantial benefits under the contract while the debtor's creditors are forced to make substantial compromises of their claims."

■ In the instant case the Court is satisfied that the lease should be rejected and that the Debtor did in fact exercise good business judgment in terminating it. By moving to the A & P building it was able to bring all of its activities under one roof with better supervision of its employees and reduce its rent from $6,567.00 a month to $1,700.00 a month, a substantial saving which would contribute greatly toward the rehabilitation of the Debtor. Admittedly, there were substantial costs in preparing the A & P premises for occupation, but these could be well absorbed over a period of years. Since this Court feels that the Debtor is entitled to rejection of the lease, Barmar's claim for rent for the unexpired term is relegated to an unsecured status, the amount of which is to be computed in accordance with the formula recited under § 502(b)(7)(A).

■ On the other hand the damages to the premises caused by the Debtor and its employees should be allowed as an expense of administration. The evidence establishes that some of the damage was caused maliciously by employees of the Debtor. It

would be clearly inequitable to permit the Debtor who damaged the premises leased as extensively as it did and then walk away with impunity from its obligation to turn over the demised premises in as good condition as they were at the beginning of the term of the lease, reasonable wear and tear excepted. Such a claim for damages is not within the contemplation of § 502(g) of the Bankruptcy Code relegating it to a pre-petition unsecured claim. This section relates to a claim for rent only for the unexpired term once the contract is rejected. It specifically states that a claim arising from rejection of an executory contract or unexpired lease of the debtor that has not been assumed shall be allowed under subsection (a), (b) or subjection (c) of § 502 as a pre-petition unsecured claim. The pertinent and only part of § 502 which relates to any claim for rejection of an unexpired lease is sub-paragraph (7) under sub-section (b) of § 502 which reads as follows:

"if such claim is the claim of a lessor for damages resulting from the termination of a lease of real property, such claim exceeds—

(A) the rent reserved by such lease, without acceleration, for the greater of one year, or 15 percent, not to exceed three years, of the remaining term of such lease, following the earlier of—

(i) the date of the filing of the petition; and

(ii) the date on which such lessor repossessed, or the lessee surrendered, the leased property; plus

(B) any unpaid rent due under such lease, without acceleration, on the earlier of such dates."

It is clear that the only reference as to the claim under an unexpired lease is rent. A claim for damage to the premises is not included and, therefore, there is no provision that the amount of such claim be limited and be allowed as unsecured only. The conduct of the Debtor was not only a breach of the covenant to deliver the premises in as good condition as the beginning of the term but it also resulted in damage to the reversionary interest of Barmar as land-

lord. This is recognized in the enforcement of such a covenant. 49 Am.Jur.2d 930 § 955.

Likewise in the case of *Matter of D. H. Overmyer*, Bkrtcy., 12 B.R. 777, the Court recognized that where there is failure to keep the premises in repair the measure of damages is the injury to the reversion. In this case the Court awarded over a million dollars in damages as an administration expense for repairs and replacements required under the lease.

This Court is satisfied that the damages of $19,395.25 plus an attorney's fee of $2,063.80 should be allowed as an administration expense.

Further, the unpaid rent for the period from May 1 through May 4, 1981 during which period the Debtor had possession should be allowed as an administrative expense. This amounts to $875.60. *In re Kors, Inc.*, (Bkrtcy., District of Vermont) 13 B.R. 683.

## ORDER

Upon the foregoing,

IT IS ORDERED as follows:

1. The claim for damages to the premises of $19,395.25 plus attorney's fees of $2,063.80 and accrued rent from May 1, 1981 to May 4, 1981 of $875.60 for a total of $22,334.65 is allowed as an administrative expense in favor of Barmar Corporation.

2. The claim of Barmar Corporation filed September 25, 1981, in the sum of "in excess of $100,000.00 and to be determined by the Court" shall be amended as unsecured for rent for the unexpired term of the lease executed on July 1, 1980, in accordance with the formula prescribed under § 502(b)(7)(A) of the Bankruptcy Code.