**In re AIR VERMONT INC., and North Atlantic Airlines, Inc., Debtors.**

**Bankruptcy Nos. 84–19, 84–17.**

United States Bankruptcy Court, D. Vermont.

May 2, 1984.

**62**

Joseph C. Palmisano, Barre, Vt., for debtor.

Douglas J. Wolinsky, Burlington, Vt., for Gene R. Kaslow.

Roger Burlingame, Laconia, N.H., for Ralph Cutillo.

## MEMORANDUM AND ORDER ON THE DEBTOR-IN-POSSESSION'S APPLICATION FOR AUTHORIZATION TO REJECT EXECUTORY CONTRACTS

CHARLES J. MARRO, Bankruptcy Judge.

This matter is before the Court on the Application of the Debtor, Air Vermont, Inc., to reject two executory contracts for the purchase of aircraft from Ralph Cutillo. The instant application was filed on February 24, 1984, and came on for hearing March 2, 1984. No objection to the Application was filed, and it is on the basis of the testimony, exhibits and subsequent memoranda submitted by the parties that the Court makes its findings and determination.

### BACKGROUND

The Debtor, Air Vermont, Inc., (hereafter "Air Vermont"), commenced business in September 1981, as a commuter airline operating from the International Airport at South Burlington, Vermont to various points primarily in the Northeast. During the airline's rapid growth, the Debtor entered various agreements for the purchase and lease of many aircraft. However, due to its rapid expansion certain financial difficulties arose which necessitated the filing of a Petition for Relief under Chapter 11 of the Bankruptcy Code on January 31, 1984.

On February 2, 1984, this Court approved the employment of Air Vermont Management Company, a management team, to resume operation of the airlines, which operations had been suspended for a period prior to the filing of the Chapter 11 proceeding. Upon taking control, the management team attempted to reduce operating costs through the reduction of air flights and employees. However, after a short period of operation, the management team determined that an economically viable operation of the business is improbable and has withdrawn any commitment for additional financial support. On March 12, 1984, the Debtor filed a Disclosure Statement and Plan which seek an orderly liquidation of the business. It is in this context that the instant Application for Authority to reject the executory contract with Ralph Cutillo, (hereafter, "Cutillo") was made.

### FACTS

On November 28, 1981 and May 19, 1983, respectively, Air Vermont entered two contracts of conditional sale with Cutillo for the purchase of two aircraft. Under the conditional sales contract of November 1981, the aircraft purchased was a 1974 Piper Chieftan, PA31–350, bearing Federal Aviation Administration (FAA) registration number N104AQ. The contract of May 1983 resulted in the purchase of another Piper Chieftan, but this aircraft was a 1979 model year bearing FAA registration number N3529A. Of these two aircraft, the only conditional sales contract or security conveyance recorded with the FAA Aircraft Registry was the conveyance of November 28, 1981. This conveyance was recorded on February 7, 1984, and this recording was subsequent to the filing of the petition in the instant case. Additionally, Air Vermont took no steps to record its interest in the aircraft with the FAA.

The 1974 Piper Chieftan, (hereafter "Aircraft N104AQ") was purchased by Air Vermont for the sum of $165,000.00, of which $10,000.00 was paid upon delivery of the aircraft. The balance of the purchase price was encompassed under the terms of a promissory note concurrently executed with the contract. Under the terms of the note, Air Vermont was to make sixty monthly payments of $3687.50. From January 1982 through December 1983, Air Vermont made the required payments reducing the balance or payoff to $107,-613.32. However, since the payment of December 21, 1983, no other payment was made under the note, excepting one returned for non-sufficient funds in January 1984.

The 1979 Piper Chieftan (hereafter "Aircraft N3529A") was purchased by Air Vermont for the sum of $170,000.00. The full purchase price was encompassed within a promissory note from Air Vermont to Cutillo, executed of even date of the May 1983 contract. This note similarly provided for sixty monthly payments, but in the sum of $3,868.95 instead. Air Vermont remitted the required payments through December 21, 1983. Like the note on Aircraft N104AQ, no further payments have been made on the May 1983 note. As such the accrued delinquencies under the notes exceed $22,000.00, through the date of the hearing.

John E. Porter, President of the Debtor, improved as a witness by the debtor, testified that Aircraft N104AQ and N3529A, as of his last viewing on or about January 15, 1984, were of a value equal or approximately the same as the indebtedness owed under the notes. However, as noted by Porter, the planes were no longer readily accessible for inspection since the aircraft were removed by Cutillo in early February. Once again, this action was taken after the filing of the petition.

## DISCUSSION

Section 365 of the Bankruptcy Code provides for the assumption or rejection of executory contracts and unexpired leases. As stated in Section 365:

(a) Except as provided in section 765 and 766 of this title and in subsection (b)(c) and (d) of this section, the trustee, subject to the court's approval may assume or reject any executory contract or unexpired lease of the debtor.

The Court will generally apply a "business judgment" test in determining whether an executory lease may be rejected, *In re International Coins and Currency, Inc.,* 18 B.R. 335, 6 C.B.C.2d 309 (Bkrtcy.D. Vt.1982); and, a similar standard was reviewed summarily and restated as to the rejection of an executory contract in the recent Supreme Court of the United States' decision of *National Labor Relations Board v. Bildisco and Bildisco, Debtor in Possession,* — U.S. ——, 104 S.Ct. 1188, 79 L.Ed.2d 482 (1984); citing *Group of Institutional Investors v. Chicago, Milwaukee, St. Paul & Pacific R. Co.,* 318 U.S. 523, 550, 63 S.Ct. 727, 742, 87 L.Ed. 959 (1943), and *In re Mingus,* 602 F.2d 38, 42 (2nd Cir.1979).

The application of the "business judgment" test must be exercised in a manner that allows flexibility, and that provides due deliberation to the interests of all creditors of the debtor. The Court in reviewing the "business judgment" as to acceptance or rejection, must further consider the substantive agreement; the subject matter of the agreement and its necessity to the debtor; and, the implications of such acceptance or rejection. Consideration of these factors follows below.

### A. SUBSTANTIVE AGREEMENTS

The contracts of November 1981 and May 1983 between Air Vermont and Cutillo provide for the conditional sale of two aircraft for consideration of sums certain. Each of these agreements, by their nature as conditional sales contracts, provided for the reservation of title in Cutillo until such time as Air Vermont made all payments, and fulfilled all conditions due under the agreements. These contracts also provided

that Cutillo was the absolute owner of legal title of the aircraft, except as to the purchase money security interests of Pioneer Credit Corporation (Aircraft N104AQ), and South Shore Bank of Quincy, Massachusetts, (Aircraft N3529A). However, in both contracts Cutillo was specifically bound to make all payments due under notes to Pioneer and South Shore Bank.

■ Cutillo argues that under the contracts before the Court, he should be regarded as owner of aircraft N104AQ and N3529A, and not as a secured creditor of the debtor. In support, Cutillo cites authority found in the decisions of *Power and Combustion, Inc. v. Wilson*, 298 F.2d 937 (4th Cir.1962); and *Carina-Mercury, Inc. v. Igaravides*, 344 F.2d 397 (1st Cir.1965). In further argument, Cutillo asserts that Air Vermont's failure to make application to the FAA to record and register the ownership transfer of the aircraft precludes *any* ownership interest from vesting in the debtor. On the basis of title 49 of the United States Code, the Federal Aviation Act, it is suggested that registration is tantamount to ownership transfer, and that the Debtor's failure to register will prevent the Trustee, or debtor by virtue of 11 U.S.C. § 1107 from asserting a defensible title.

The contracts between Air Vermont and Cutillo are substantively conditional sales contracts in which the retention of title was intended as security. Therefore, Cutillo's argument as owner and not creditor is inapposite. Equally inapposite are the decisions cited by Cutillo. Upon careful review, this Court notes that there was no potential infirmity in the perfection of the conditional sales contract in *Power and Combustion*, (see footnote 3 of that decision); and, the Court in *Carina* failed to recognize Congressional action regarding the definition of "transfer" under Section 1(30) of the Bankruptcy Act, as that definition effected conditional sales contracts. *In re Markham*, 254 F.Supp. 948 (W.D.Va. 1966). As such, no weight may be afforded these cases.

■ Aircraft conditional sales contracts which title is retained as security are specifically addressed by 49 U.S.C. § 1403(a), and the validity of such an interest is determined by 49 U.S.C. § 1403(c). In the instant case, it appears that the only recordation of either the debtor's interest or Cutillo's interest was in aircraft N104AQ. This recordation occurred seven days after the filing of the petition for relief, and as a violation of the automatic stay, 11 U.S.C. § 362(a)(4) & (5), is clearly ineffective. *In re George B. Kerr, Inc.*, 25 B.R. 2 (Bkrtcy. S.C.1981); *In re Marta Group, Inc.*, 33 B.R. 634 (Bkrtcy.E.D.Pa.1983), stating, "[a]ttempts to amend the financing statement (after the filing of the reorganization petition) are in violation of the automatic stay imposed by 11 U.S.C. § 362(a), in particular § 362(a)(4). As a general rule actions taken in violation of the stay are void and without effect. *Kalb v. Feuerstein*, 308 U.S. 433, 60 S.Ct. 343, 84 L.Ed. 370 (1940); 2 *Collier on Bankruptcy* ¶ 362.11 (15th ed. 1982)." 33 B.R. at 639.

As to the effect of registration on ownership, 49 U.S.C. § 1401(f) states, "[R]egistration shall not be evidence of ownership of aircraft in any proceeding in which such ownership by a particular person is, or may be, in issue." Section 1401(f), itself, refutes Cutillo's argument, but additional authority against Cutillo's position is also found in case law. See *North-Western Flyers Inc. v. Olson Bros. Mfg. Co.*, 679 F.2d 1264, 1270 (8th Cir.1982); *Norris v. Insurance Co. of North America*, 26 N.C. App. 91, 215 S.E.2d 379, 388 (1975); *Johnston v. Simpson*, 621 P.2d 688, 690 (S.Ct. Utah 1980), ("Ownership is therefore a totally separate question from registration.")

Substantively, the contract between Air Vermont and Cutillo have a potential of rendering a benefit to the creditors of the debtor. It is clear that Air Vermont has an ownership interest in aircraft N104AQ and N3529A, which if appropriate actions are taken will render cash value to the estate that may be applied to the anticipated plan of liquidation.

## B. SUBJECT MATTER—NECESSITY TO DEBTOR

The possession, ownership and use of the two Piper Chieftan aircraft was the subject matter of the contracts between Air Vermont and Cutillo. However, there appears to be no doubt that possession and use of the aircraft is no longer of necessity to the debtor. This determination is based upon the debtor's surrender of the aircraft in early February, and its subsequent cessation of flight operations. However, a competing necessity arises from whether the contracts can render some cash value for the estate. On the basis of the record, the contracts appear to have a viable potential toward fulfilling this need, and a review of the contract in this context is warranted.

## C. IMPLICATIONS OF ACCEPTANCE OR REJECTION

Section 1107 of the Bankruptcy Code provides that a debtor in possession shall have all the rights, powers and duties of a trustee. Included within these rights and powers is the ability of the debtor in possession to assume or reject an executory contract or unexpired lease. This power is specifically set forth in Section 365(d)(2), which states:

> In a case under chapter 9, 11, or 13 of this title, the trustee may assume or reject an executory contract or unexpired lease of the debtor at any time before the confirmation of the plan, but the court, on request of any party to such contract or lease, may order the trustee to determine within a specified period of time whether to assume or reject such contract or lease.

In the instant case, Cutillo has not requested the Court to set a date for which the debtor must assume or reject the contracts regarding N104AQ and N3529A, nor does it appear that confirmation of a plan is in the immediate offering. As such, the necessity of an immediate assumption or rejection by the debtor in possession is not apparent, other than to reduce accumulating payments under the contract.

Further, a chapter 11 debtor is not required to assume or reject an executory contract or unexpired lease within 60 days, as required of a chapter 7 trustee by virtue of Section 365(d)(1). It is this Court's opinion that this omission was provided by the Code as to give the debtor or trustee under a chapter 11 proceeding a reasonable time to determine whether the contract will be necessary to the reorganization or of benefit to the estate. (See discussion of the "balancing of equities" as to setting time for assumption or rejection in a complex case, *Dallas-Fort Worth Regional Airport Board v. Braniff Airways Inc.*, 26 B.R. 628, 636 (N.D.Tex.—Fort Worth Div.1982).

Rejection of an executory contract under the Bankruptcy Code relates back prior to the filing of the Chapter 11 petition. 11 U.S.C. § 365(g)(1), *In re Concrete Pipe Machinery Co.*, 28 B.R. 837 (Bkrtcy.Ia.1983). As a result of rejection, the contract is deemed breached and the party to the contract may file an unsecured claim for damages. 11 U.S.C. § 365(g); 11 U.S.C. § 502(g). As applied in the instant case, the contract would be deemed breached prior to the petition and Cutillo could file a claim for the installment payments due for January, February, and March 1984, without presently giving regard to Cutillo's repossession in February.

However, the rejection and resulting breach must also be considered with regard being given to the other trustee powers vested in a debtor in possession by virtue of 11 U.S.C. § 1107 of the Code. The debtor in possession has all the powers of a trustee, *In re Brent Explorations, Inc.*, 31 B.R. 745, 747 (Bkrtcy.D.Colo.1983); which includes the ability to avoid transfers as a lien creditor, 11 U.S.C. § 544; and to avoid preferential transfers, 11 U.S.C. § 547, Brent at 748, 749.

In view of the Court's prior discussion regarding the substantive nature of the agreements, it appears that the debtor, in order to fulfill the standard of "business judgment," should review the contracts with regard to all of the powers which are vested by Section 1107.

## ORDER

Now, therefore, upon the foregoing, the Debtor in Possession's Application for Authorization to Reject Executory Contract is DENIED.