BANK OF HONOLULU, a Hawaii corporation, Plaintiff, *v.* PAMELA B. DAVIDS, Defendant-Appellee, and DANIEL D. DAVIDS, II, and AMERICAN FLYING COMPANY, INC., a Hawaii corporation, Defendants, and KEVIN CACHO and HUI 500, Intervenors-Appellants

NO. 9777

(CIVIL NO. 73009)

SEPTEMBER 20, 1985

BURNS, C.J., HEEN AND TANAKA, JJ.

OPINION OF THE COURT BY HEEN, J.

Intervenors-appellants Kevin Cacho and Hui 500[1] (hereafter collectively Cacho) appeal from the lower court's orders denying Cacho's motions for relief from execution and "To Alter Judgment on Intervenors' Motion For Relief From Execution." We affirm.

Bank of Honolulu commenced this action against Pamela B. Davids (hereafter Pamela), her former husband Daniel D. Davids II (hereafter Daniel), and American Flying Co., Inc., a Hawaii corporation (hereafter American Flying), to recover on a promissory note in its favor. Pamela answered and cross-claimed against Daniel for indemnification. Judgment was rendered against Pamela on the complaint in the amount of $5,843.69, and Pamela subsequently obtained default judgment against Daniel in the same amount.

On September 23, 1983, Pamela obtained a writ of execution authorizing the State Sheriff to "levy upon the personal property of DANIEL D. DAVIDS II, Cross-Defendant herein, including specifically, but not limited to a Cessna 15282863, registration N89774[.]" A deputy sheriff executed the writ and levied against the airplane on the island of Maui on September 30, 1983. On October 19, 1983, Cacho filed a motion for "Relief from Execution," alleging that he and not Daniel was the owner of the airplane. On October 24, 1983, Cacho filed a motion to intervene. On October 27, 1983, after hearing, the court orally denied Cacho's motion for relief. On November 29, 1983, Cacho filed a "motion to alter judgment," citing Rules 59 and 60, Hawaii Rules of Civil Procedure (HRCP) (1981); however, the order denying his motion for relief from

---

[1] We do not know the legal status of Hui 500. We assume it is a partnership.

execution was not filed until December 9, 1983.[2] On that latter date the court also heard and orally denied Cacho's motion to alter judgment.

On December 23, 1983, Cacho filed a notice of appeal from the orders "entered October 27, 1983 and December 9, 1983[.]" Thereafter, several motions and orders were filed relating to the appeal, and on September 17, 1984, Cacho filed his opening brief. On November 20, 1984, the trial court's order denying Cacho's motion to alter judgment was filed, and on December 3, 1984, Cacho filed an amended notice of appeal from the orders of December 9, 1983, and November 20, 1984.

I.

Pamela questions the jurisdiction of this court, arguing that the first notice of appeal was untimely because it preceded the written order of November 20, 1984, and the amended notice of appeal did not cure the defect, because Cacho should have filed a new notice of appeal instead. The argument is without merit.

The first notice of appeal was in fact untimely under Rules 58 and 73, HRCP,[3] having preceded the written order denying the motion to alter judgment. The supreme court has held, however, that while such an untimely appeal is a nullity, the filing of an amended notice of appeal within the proper time after entry of the appropriate written order or judgment appealed from makes the appeal effective. *Madden v. Madden,* 43 Haw. 148, 151 (1959).

Pamela asserts, however, that even if the amended notice was effective, Cacho should have also re-filed an opening brief after its amended notice. On May 14, 1985, we denied Cacho's motion to file an amended opening brief. None of Cacho's rule violations have misled Pamela, *see In re Dean Trust,* 47 Haw. 304, 387 P.2d 218 (1963), and the issues remained the same before and after the amended notice of appeal.

---

[2]The same order granted Cacho's motion to intervene.

[3]Under Rule 4(a)(2), Hawaii Rules of Appellate Procedure (HRAP), effective June 1, 1984, the notice would not be untimely, since the pertinent part of the rule regarding time for taking appeals has been amended to read: "notice of appeal filed after the announcement of a decision or order but before the entry of the judgment or order shall be treated as filed after such entry and on the day thereof." Rule 73, Hawaii Rules of Civil Procedure (HRCP) was deleted upon promulgation of HRAP.

Except for the formality Pamela has put forth, we find no reason to further clutter this court's records with another set of briefs in these circumstances.

2.

The question is whether Cacho is entitled to relief from Pamela's levy of execution where he has failed to register the conveyance with the Federal Aviation Administration. Put another way, where the purchaser of an aircraft fails to register his title with the FAA can the seller's judgment creditor, who has no actual knowledge of the conveyance of the aircraft, levy against the aircraft in execution of her judgment? We answer, yes.

There is no dispute that Daniel sold the airplane to Cacho on July 17, 1981, and Cacho paid by a check payable to American Flying Co. Daniel testified that before it was sold the airplane really belonged to American Flying Co., doing business as Hawaii Air Academy, and the registration in his name was really a matter of convenience. Daniel was president of American Flying Co.[4] However, the airplane was not thereafter registered in Cacho's or Hui 500's name with the FAA as required by 49 App. U.S.C. § 1401(a) and (b) (1982 Ed.).[5] At the time of seizure the airplane was still registered in Daniel's name. Cacho argues that,

---

[4]The lower court found that there was no authority to sell the airplane. We are puzzled by this finding. It appears to be a finding that the airplane in fact belonged to American Flying Co. However, under our ruling, here, the finding is immaterial, since it is the registration with FAA that determines Pamela's right to levy against it.

[5]The statute reads in pertinent part as follows:

(a) Necessity; . . . . It shall be unlawful for any person to operate or navigate any aircraft eligible for registration if such aircraft is not registered by its owner as provided in this section . . . .

(b) Eligibility for registration. An aircraft shall be eligible for registration if, but only if ---

(1)(A) it is

(i) owned by a citizen of the United States or by an individual citizen of a foreign country who has lawfully been admitted for permanent residence in the United States; or

(ii) owned by a corporation (other than a corporation which is a citizen of the United States) lawfully organized and doing business under the laws of the United States or any State thereof so long as such aircraft is based and primarily used in the United States; and

(B) it is not registered under the laws of any foreign country . . . .

notwithstanding the failure to register the airplane, it was not Daniel's property and could not be seized under the applicable execution statutes. Hawaii Revised Statutes (HRS) §§ 651-36, -39 (1976). Those statutes read as follows:

§ 651-36  Execution, courts of record; form.  The forms of executions to be issued from courts of record shall be the same as have been established by the usage and practice of such courts; but alterations therein may, from time to time, be made or allowed by the supreme court, when necessary to adapt them to changes in the law, or for other sufficient reasons.

§ 651-39  Available in all circuits.  Any writ of execution or other writ issued for the purpose of carrying into effect any final order, judgment, or decree of any circuit court or circuit judge at chambers shall be available against the property of the person against whom the writ shall issue in whatever circuit the property is situated and the writ shall be as effective for all purposes in each of the circuits as in the circuit where it is issued.

Citing 49 App. U.S.C. § 1403 (1982 Ed.),[6] Pamela argues that since she did not have actual notice of the conveyance her right to levy against the plane has priority over Cacho's, the conveyance is not valid as to her, 49 App. U.S.C. § 1403(c), and, thus, the airplane is still the "property" of

---

[6]The cited section reads in pertinent part as follows:

Recordation of aircraft ownership

(a) Establishment of recording system.  The Administrator [Secretary of Transportation] shall establish and maintain a system for the recording of each and all of the following:

(1) Any conveyance which affects the title to, or any interest in, any civil aircraft of the United States;

. . . . 

(c) Validity of conveyances or other instruments, filing.  No conveyance or instrument the recording of which is provided for by section 503(a) [subsec. (a) of this section] shall be valid in respect of such aircraft, aircraft engine or engines, propellers, appliances, or spare parts against any person other than the person by whom the conveyance or other instrument is made or given, his heir or devisee, or any person having actual notice thereof, until such conveyance or other instrument is filed for recordation in the office of the Administrator [Secretary of Transportation] . . . .

(d) Effect of recording.  Each conveyance or other instrument recorded by means of or under the system provided for in subsection (a) or (b) of this section shall from the time of its filing for recordation be valid as to all persons without further or other recordation . . . .

Daniel, within the meaning of HRS §§ 651-36 and -39, *supra.*

The recording requirement of the Federal Aviation Act, 49 App. U.S.C. §§ 1401-1406 (1982 Ed.), has been the subject of several decisions and has been uniformly interpreted as invalidating, as to all except the immediate parties and those with actual notice, all instruments or conveyances of title or interest in any aircraft until they are recorded. *Philko Aviation, Inc. v. Shacket,* 462 U.S. 406, 103 S.Ct. 2476, 76 L.Ed.2d 678 (1983); *South Shore Bank v. Tony Mat, Inc.,* 712 F.2d 896 (3rd Cir. 1983); *CIM International v. United States,* 641 F.2d 671 (9th Cir. 1980). The purpose of the statute is to create a "clearinghouse" for recordation of aircraft titles so that anyone dealing with aircraft may know where he can have ready access to claims against, or liens, or other legal interests in aircraft. *Philko Aviation, Inc. v. Shacket, supra.* The system is designed to give notice of security interests in aircraft. *Cummins v. Sky Cruisers, Inc.,* 59 Cal. App. 3d 983, 130 Cal. Rptr. 897 (1976).

However, registration of an aircraft under 49 App. U.S.C. § 1401 is conclusive evidence only of the aircraft's "nationality." *State Department of Transportation v. Greene,* 158 N.J. Super. 124, 385 A.2d 896 (1978). It is not "evidence of ownership of aircraft in any proceeding in which such ownership by a particular person is, or may be, in issue." 49 App. U.S.C. § 1401(f) (1982 Ed.);[7] *see Northwestern Flyers, Inc. v. Olson Brothers Manufacturing Co.,* 679 F.2d 1264, 1270 (8th Cir. 1982); *In re Air Vermont, Inc.,* 40 B.R. 61, 64 (D. Vt. 1984); *Johnston v. Simpson,* 621 P.2d 688, 690 (Utah 1980); *Norris v. Insurance Co. of North America,* 26 N.C. App. 91, 215 S.E.2d 379, 389 (1975).

The Supreme Court stated in *Philko,* that, under 49 App. U.S.C. § 1406 (1982 Ed.),[8] "[a]lthough state law determines priorities, all interests must be federally recorded before they can obtain whatever priority to which they are entitled under state law." *Id.* 462 U.S. at 413, 103 S.Ct.

---

[7]49 App. U.S.C. § 1401(f) reads as follows:

(f) Effect of registration.   Such certificate shall be conclusive evidence of nationality for international purposes, but not in any proceeding under the laws of the United States. Registration shall not be evidence of ownership of aircraft in any proceeding in which such ownership by a particular person is, or may be, in issue.

[8]The pertinent part of 49 App. U.S.C. § 1406 provides:

The validity of any instrument the recording of which is provided for by section 503 of this Act [49 U.S.C. § 1403] shall be governed by the laws of the State . . . in which such instrument is delivered . . . .

at 2480, 76 L.Ed.2d at 684. Thus, under the federal law, Cacho's unrecorded title has no priority against Pamela's execution.

Citing 49 App. U.S.C. § 1401(f), however, Cacho argues that, since the airplane really belonged to American Flying Co., although registered in Daniel's name, it was not the "property" of Daniel and the levy was unlawful.

Hawaii has no statute requiring aircraft registration.[9] As between buyer and seller, some courts have looked to the provisions of the Uniform Commercial Code (UCC) to determine when title to an aircraft passes. *Northwestern Flyers, Inc. v. Olson Bros. Manufacturing Co., supra; Norris v. Insurance Co. of North America,* 26 N.C. App. 91, 215 S.E.2d 379 (1975); *Johnston v. Simpson,* 621 P.2d 688 (Utah 1980). Hawaii has adopted the UCC, HRS chapter 490, and under § 2-401(2)[10]

---

[9] In HRS §§ 261-15(a) (1976) and -71(b) (Supp. 1984), however, the legislature evinces an intent to rely upon FAA registration in prohibiting the operation of aircraft in Hawaii without a certificate, permit or license from the United States, and in requiring the State Transportation Director to give notice of his seizure of an abandoned aircraft to owners and lienholders registered with the FAA. There is a split of authority as to whether the federal law preempts the field of aircraft registration. *See State Department of Transportation v. Greene,* 158 N.J. Super. 124, 385 A.2d 896 (1978).

[10] HRS § 490:2-401(2) (1976) provides in pertinent part:

Passing of title; reservation for security; limited application of this section. Each provision of this Article with regard to the rights, obligations and remedies of the seller, the buyer, purchasers or other third parties applies irrespective of title to the goods except where the provision refers to such title. Insofar as situations are not covered by the other provisions of this Article and matters concerning title become material the following rules apply:

. . . .

(2) Unless otherwise explicitly agreed title passes to the buyer at the time and place at which the seller completes his performance with reference to the physical delivery of the goods, despite any reservation of a security interest and even though a document of title is to be delivered at a different time or place; and in particular and despite any reservation of a security interest by the bill of lading

(a) If the contract requires or authorizes the seller to send the goods to the buyer but does not require him to deliver them at destination, title passes to the buyer at the time and place of shipment; but

(b) If the contract requires delivery at destination, title passes on tender there.

(3) Unless otherwise explicitly agreed where delivery is to be made without moving the goods,

(a) If the seller is to deliver a document of title, title passes at the time when and the place where he delivers such documents; or

(b) If the goods are at the time of contracting already identified and no documents are to be delivered, title passes at the time and place of contracting.

thereof, title to the airplane passed upon sale and delivery to Cacho. However, that section is not dispositive of the rights of third party bona fide purchasers or lienors. Moreover, article 9 of the UCC dealing with secured transactions generally does not apply to statutory liens. *See* HRS § 490:9-102(2) (1976).

The question of a creditor's right to attach an aircraft which was the subject of an unrecorded conveyance is one of first impression in this jurisdiction. However, the same question has arisen with regard to unregistered transfers of titles to automobiles.

In *Hess v. Paulo,* 38 Haw. 279 (1949), it was held that the transfer of ownership of an automobile was invalid against the transferor's creditor because the transfer was not registered and a new certificate of registration was not obtained, as required by law, before the transferor's creditor executed a lien on the automobile. The law regarding automobile registration at that time, Revised Laws of Hawaii § 7342(5) (1945), stated that, "[u]ntil the treasurer shall have issued the new certificate of registration and certificate of ownership . . ., delivery of such vehicle shall be deemed not to have been made and title thereto shall be deemed not to have passed, and the intended transfer shall be deemed to be incomplete and not to be valid or effective for any purpose." *Hess v. Paulo,* 38 Haw. at 297; *see Swartz v. White,* 80 Utah 150, 13 P.2d 643 (1932). The present statute, HRS § 286-52(e) (1976), is identical, except for the addition of language indicating that title does not pass notwithstanding the provisions of the UCC and that a security interest is to be perfected in accordance with the UCC. We are not concerned in this case with a security interest.

We apply the supreme court's reasoning in *Hess* to the instant case by analogy. Both 49 App. U.S.C. § 1403(c) and HRS § 286-52(e) are clear as to the registration requirement and the consequential effect on the validity of a conveyance occasioned by a failure to comply with the requirement.

Cacho's failure to register his title to the aircraft for at least two full years before Pamela, without actual notice of the conveyance, levied execution to satisfy her judgment against Daniel, is fatal to Cacho's

---

(4) A rejection or other refusal by the buyer to receive or retain the goods, whether or not justified, or a justified revocation of acceptance revests title to the goods in the seller. Such revesting occurs by operation of law and is not a "sale".

right to relief from that execution. Cacho's ownership interest, being unrecorded at the time Pamela levied on the aircraft, was invalid as to her and could not operate to cut off her right to levy on the aircraft. *Philko Aviation, supra; Hess v. Paulo, supra.*

Moreover, the registered title to the aircraft was in Daniel's name, and was his property subject to execution under HRS §§ 651-36 and -39 by Pamela as his creditor, where she did not have actual knowledge of the conveyance. *Hess v. Paulo, supra.*

3.

Cacho also urges on appeal that the lower court abused its discretion in denying his motion to alter judgment, which was based on the ground of newly discovered evidence that Pamela had actual notice of the sale of the aircraft to Cacho prior to levying against it.[11] We disagree.

In *Orso v. City and County,* 56 Haw. 241, 534 P.2d 489 (1975), *distinguished on other grounds,* 61 Haw. 236, 239-40 n.6, 602 P.2d 521, 525 n.6 (1979), the supreme court set the following requirements for establishing a basis for a new trial on the ground of newly discovered evidence:

(1) The evidence must be previously undiscovered even though due diligence was exercised;

(2) The evidence must be admissible and credible; and

(3) The evidence must be of such a material and controlling nature as will probably change the outcome and not merely cumulative or tending only to impeach or contradict a witness. *Id.* at 250, 534 P.2d at 494.

In the final analysis, however, a motion for new trial is directed to the sound discretion of the trial court and its decision will not be overturned absent a clear abuse of that discretion. *Stahl v. Balsara,* 60 Haw. 144, 587 P.2d 1210 (1978).

We have no difficulty finding that the evidence which Cacho had discovered met the second requirement of *Orso.* However, we are not

---

[11]In his opening brief, Cacho states his motion was filed "[w]ithin ten days after the circuit court's oral ruling" on his motion for relief from execution. The record does not bear this out. However, under Rule 60(b), HRCP (1981), he was not foreclosed from filing the motion based on newly discovered evidence.

34

convinced that requirements one and three are satisfied.

Cacho has not convinced us that the evidence could not have been discovered through due diligence prior to the hearing on his motion for relief from execution. Examination of American Flying's records and interviews with Daniel, who was president of American Flying, would have revealed the names of employees past and present who would have had knowledge of the sale, and interviews with them would have uncovered the evidence.

Additionally, the offer of proof made by Cacho was insufficient to show that Pamela had actual or constructive knowledge of the sale. Cacho offered to prove through a former employee of American Flying that the employee had informed an attorney named Earl Williams (Williams) before the levy of execution that the aircraft had been sold by Daniel to Cacho. Thereafter, Williams twice inquired at the FAA to determine who had registered title to the aircraft. The levy followed. On the basis of those two inquiries, Cacho argues that Williams, who did not appear as attorney of record in any of the proceedings below, was acting as Pamela's agent and notice to him was notice to Pamela. But Cacho did not offer to call Williams as a witness at the hearing, and could offer no other proof of any connection between Williams and Pamela. There is no evidence or offer of proof that Williams transmitted his knowledge of the sale to Pamela. The record only indicates that he made two inquiries as to registry, and, apparently, his information as to registration led to the execution. However, that is not evidence that whatever information he had concerning the sale was imparted to Pamela or that he was Pamela's agent.

In light of the offer of proof made to the trial court and the records herein, Cacho has failed to convince us that the lower court clearly abused its discretion in denying his motion.

Affirmed.

*Anthony L. Ranken* (*Joel E. August* with him on the briefs; *Lowenthal & August* of counsel) for intervenors-appellants.

*Stephanie A. Rezents* (*Daniel S. Ukishima* and *Jay T. Suemori* with her on the brief; *Ukishima & Matsubara* of counsel) for defendant-appellee.